Aaron B. Zisser [S.B. # 302926]
ZISSER LAW OFFICE
5706 Cahalan Ave., #23730
San Jose, CA 95153
Telephone: (669) 228-5154
Fax: (408) 404-8980
Email: aaron@zisserlawoffice.com

Attorney for Plaintiff Jane Roe #1, by
and through her Guardian ad Litem, Jane Roe #2

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

JANE ROE #1, a minor, by and through her
guardian ad litem, JANE ROE #2,

             Plaintiff,

    vs.

MILL VALLEY SCHOOL DISTRICT;
JASON MATLON, in his individual capacity;
ERIN CONKLIN, in her individual capacity;
ELIZABETH KAUFMAN, in her individual
capacity; SINEAD MCDONOUGH, in her
individual capacity; RACHEL BUDNICK, in
her individual capacity; NOVA BONNETT, in
her individual capacity; and DOES 1-20, in
their individual capacities,

             Defendants.

Case No.: 3:25-cv-8823

**COMPLAINT FOR DAMAGES**

1. **FOURTEENTH AMENDMENT – EQUAL PROTECTION**
2. **FOURTEENTH AMENDMENT – DUE PROCESS**
3. **FIRST AMENDMENT / RETALIATION**
4. **SUPERVISORY LIABILITY (FIRST AND FOURTEENTH AMENDMENTS)**
5. **MONELL LIABILITY**
6. **TITLE IX – DELIBERATE INDIFFERENCE TO SEXUAL MISCONDUCT**
7. **TITLE IX – PROMPT AND EQUITABLE INVESTIGATION**
8. **TITLE IX – ERRONEOUS OUTCOME**
9. **TITLE IX – HOSTILE ENVIRONMENT**
10. **TITLE IX – RETALIATION**
11. **NEGLIGENT SUPERVISION**
12. **NEGLIGENCE**
13. **RESPONDEAT SUPERIOR**
14. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
15. **SEX DISCRIMINATION (Ed. Code**

§220)
16. **UNRUH ACT (Cal. Civ. Code § 51)**
17. **BANE ACT (Violations of Civil Code §52.1)**
18. **GENDER VIOLENCE (Violations of Civil Code §52.4)**
19. **INVASION OF PRIVACY**
20. **BREACH OF CONFIDENCE**

**JURY TRIAL DEMANDED**

## I.    PRELIMINARY STATEMENT

1.    Plaintiff Jane Roe #1, a minor, brings this suit, by and through her Guardian ad Litem, Jane Roe #2, against her former educational institution, Mill Valley School District ("District"), and against individual defendants, alleging violations of the United States Constitution, Title IX of the Education Amendments, and state law.

2.    Defendants failed to ensure that Plaintiff could safely attend her public school following an incident of sexual harassment involving a boy in her classroom, conducted a wholly inadequate investigation into her allegations of sexual misconduct and of allegations regarding the principal's mishandling of the initial report of sexual misconduct, denied her supportive measures required under Title IX, compounded the trauma by providing access to a therapist who then engaged in sexually inappropriate conduct, and allowed for an extraordinary breach of confidentiality by releasing detailed information about Plaintiff's therapy sessions to District officials and the family of the boy whom Plaintiff had accused in the first place.

3.    The numerous failures at every stage and every level illustrate a culture at the District of callousness toward, dismissiveness of, and minimization of sexual misconduct, in violation of Plaintiff's rights.

//

## II.     INTRODUCTION

4.     Plaintiff was a second-grade student in the District at the time of the incident and resulting investigations. At the time of the incidents, Plaintiff attended Old Mill Elementary School ("Old Mill" or "school"), where the incident occurred.

5.     When Plaintiff reported an incident involving sexual misconduct by another student in her classroom, the principal short-circuited the Title IX process, denied basic supportive measures, minimized what had happened, and tried to force a resolution on the family.

6.     Once supportive measures were provided in the form of therapy services, the therapist engaged in grossly inappropriate behavior during an on-campus therapy session by challenging Plaintiff to touch her (the therapist's) genitals to demonstrate what the incident with the classmate had entailed.

7.     The therapist then disclosed, without a release or waiver, the full details of her therapy sessions with Plaintiff to the contracted Title IX investigator.

8.     The school counselor likewise disclosed to the investigator confidential information Plaintiff had shared.

9.     The investigator, in turn, released those details in her initial investigation report, which the Title IX coordinator and others released to, among others, the family of the boy whom Plaintiff had accused.

10.     The District's attempt to claw back the confidential material was feeble and futile.

11.     The District profoundly mishandled its investigation of Plaintiff's allegations of misconduct by the classmate and by the principal, including, but not limited to, by hiring an entirely inexperienced and unqualified investigator; rejecting repeated requests to assign a

different investigator; omitting key allegations, evidence, lines of inquiry, and witnesses; conducting wholly slanted credibility assessments; improperly dismissing the complaint against the principal; and issuing an inadequate appeal decision regarding that dismissal.

12.     Ultimately, Plaintiff moved to another state.

### III.     JURISDICTION AND VENUE

13.     This Complaint seeks damages for violations of the civil rights, privileges, and immunities guaranteed by the First and Fourteenth Amendments of the United States Constitution, pursuant to 42 U.S.C. §§ 1983 and 1988. Plaintiff also brings this action pursuant to Title IX of the Education Amendments Act, 20 U.S.C. §§ 1681, *et seq*.

14.     This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights). Plaintiffs' state-law claims are within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

15.     This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1376 because the claims form part of the same case or controversy arising under the United States Constitution and federal law.

16.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391, as the underlying acts, omissions, injuries and related facts occurred in Mill Valley, California, and because Defendants reside in the Northern District of California. This is an action for damages and such other and further relief as may be consistent with law.

### IV.     EXHAUSTION OF ADMINISTRATIVE REMEDIES

17.     Pursuant to Government Code § 910, Plaintiff presented a timely appropriate government claim for damages on or around February 24, 2025, less than six months after the incidents. On April 15, 2025, the District sent notification denying the claim. This action is

timely.

## V.     PARTIES

18.     Plaintiff JANE ROE #1 is a minor citizen of the State of California and, at all times relevant herein, was domiciled in the Northern District of California. She enrolled at Old Mill as a second-grade student in Fall 2023.

19.     Defendant DISTRICT is a public school district in Mill Valley, California. At all times relevant to this Complaint, the District conducted business in the Northern District of California. The District operates programs in receipt of federal funds and is thus covered by Title IX's prohibition on sex-based discrimination.

20.     Defendant JASON MATLON is and was at all times relevant herein the Principal of Old Mill, the top school official and therefore responsible for all of the school's relevant operations and activities.

21.     Defendant ERIN CONKLIN is and was at all times relevant herein the District's Title IX Coordinator, responsible for coordinating and overseeing the District's compliance with Title IX.

22.     Defendant ELIZABETH KAUFMAN is and was at all times relevant herein the District's Superintendent, the top official at the District and therefore responsible for overseeing all relevant District operations and activities.

23.     Defendant SINEAD McDONOUGH was contracted by the District to conduct the District's Title IX investigation into the allegations by Plaintiff. Defendant McDonough is and was at all times relevant herein an investigator with the firm Lozano Smith but conducted her investigation on behalf and at the request of the District.

24.     Defendant RACHEL BUDNICK was at all times relevant herein an unlicensed

psychologist contracted by the District to provide counseling and therapy services to students enrolled in the District.

25.     Defendant NOVA BONNETT is and was at all times relevant herein a school counselor employed with the District.

26.     Defendants DOES 1-20 are additional employees or agents of the District who were responsible for supervision of students and/or the inadequate response to Plaintiff's reports of sexual misconduct and discrimination. Plaintiff alleges that each of the Defendants named as a "DOE" was in some manner responsible for the acts and omissions alleged herein.

27.     Plaintiff is informed and believes, and thereupon alleges, that at all times mentioned herein Defendants worked in Marin County, State of California. Plaintiff is informed and believes, and thereupon alleges, that at all times mentioned herein Defendants were employees, agents, and/or servants of the District and acted within the course and scope of said employment, agency, and/or service.

28.     Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1 through 20, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff is informed, believes, and alleges that each of the fictitiously named defendants is legally responsible, intentionally, negligently, or in some other actionable manner, for the events and happenings hereinafter referred to and described, and thereby illegally caused the injuries, damages, and violations and/or deprivations of rights hereinafter alleged. Plaintiff will seek leave of Court to amend this Complaint and state the true names and/or capacities of said fictitiously named defendants when the same have been ascertained.

29.     The reason why Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES, inclusive, is that same have been unascertainable as of the date

of filing of this Complaint and many of their records may be protected by state statute and can only reasonably be ascertained through the discovery process.

## VI.    FACTS

**A. Defendant Matlon's initial response to and investigation of the reported harassment was cursory, one-sided, and wholly inadequate**

30.    On August 30, 2024, a male student ("Respondent") at the school was sitting near Plaintiff in their classroom when he reached toward her and touched her genitals.

31.    Plaintiff immediately reported Respondent's conduct to her teacher.

32.    Upon Plaintiff reporting this conduct by Respondent, the school's principal, Defendant Matlon interviewed Plaintiff and Respondent, despite his lack of experience or expertise in investigating sexual misconduct incidents.

33.    When Defendant Matlon interviewed Plaintiff, he did so alone, that is, without a support person present and without first notifying Plaintiff's parents.

34.    Defendant Matlon interviewed Plaintiff twice, despite the need to refer the report to the Title IX office and immediately ensure supportive measures and despite the fact that Plaintiff's parents communicated after the first interview that they did not want him to interview Plaintiff alone.

35.    Defendant Matlon did not take notes regarding his interviews with Plaintiff, thus compromising the investigation.

36.    Defendant Matlon immediately determined the outcome of the report despite the absence of any real investigation or even consultation with Plaintiff, her parents, or the Title IX coordinator about the appropriate outcome.

37.     When Defendant Matlon eventually met with Plaintiff's mother later the same day as the incident, he adopted a dismissive attitude and indicated he did not take the matter seriously; refused to provide requested supportive measures; and failed to implement any safety measures to prevent further inappropriate touching and to ensure Plaintiff felt safe returning to the classroom.

38.     Defendant Matlon failed to ensure Plaintiff would be separated from Respondent. Instead, he initially sent her back to the classroom where Respondent was still present, thus placing her at risk of further harm.

39.     Defendant Matlon refused to immediately provide Plaintiff with access to counseling services.

40.     Defendant Matlon advised Plaintiff and her parents of the outcome of his review of her report of sexual misconduct before any meaningful process had occurred. Specifically, he advised them that Respondent would apologize to her, giving Plaintiff the option of a written apology or an in-person apology. He indicated this was the only outcome from the report.

41.     Defendant Matlon did not notify Plaintiff or her parents of their option to file a Title IX complaint or speak with the Title IX coordinator.

42.     Defendant Matlon broached the question of a classroom change, saying, unprompted, that he would neither do this nor send Respondent home.

43.     Defendant Matlon stared at Plaintiff's mother and popped a mint into his mouth.

44.     When Plaintiff's mother told Defendant Matlon that she would be contacting the superintendent, Defendant Matlon responded by saying that he would contact the superintendent first.

45.     Defendant Matlon's conduct as described herein evidences gender bias in his

handling of Plaintiff's report of misconduct.

46.    Once Plaintiff's mother contacted the superintendent, the superintendent ensured the transfer of Respondent to another classroom.

47.    Upon information and belief, Defendant Matlon was aware, before the incident with Respondent, of behavioral challenges with the Respondent at his previous school.

48.    Upon information and belief, Defendant Matlon failed to share this information with Plaintiff's teacher and failed to take other measures to prevent Respondent's misconduct.

**B. The investigation of the sexual misconduct allegations was deeply flawed**

49.    On or about September 3, 2024, Plaintiff's parents filed a complaint with the District's Title IX office regarding both Respondent's sexual harassment conduct and Defendant Matlon's handling of the report.

50.    Plaintiff's parents alleged that Defendant Matlon's conduct towards Plaintiff was motivated by sex discrimination.

51.    The District enlisted Defendant McDonough to conduct the investigation of the complaints against the student-respondent and against Defendant Matlon.

52.    Defendant McDonough was just over two years out of law school and had been admitted to practice law for less than two years.

53.    Defendant McDonough was not listed on her firm's website as belonging to either the Title IX practice group or the investigations practice group.

54.    Upon information and belief, Defendant McDonough lacked any meaningful experience conducting interviews of young children, particularly children who had experienced trauma and/or sexual misconduct.

55.    Upon information and believe, the District knew of Defendant McDonough's lack

of experience.

56.     The Title IX office accepted the complaint against Respondent, did not dismiss it under U.S.C. § 106.45(b)(3)(i) of the Title IX regulations, and thus determined that the allegations, if true, would constitute sexual harassment.

57.     Defendant McDonough's investigations and investigation reports were riddled with serious flaws.

58.     In response to the initial draft of the investigation report, issued on November 1, 2024, Plaintiff's parents, through their attorney, notified the District that the draft report regarding the complaint against Respondent contained voluminous confidential information about Plaintiff that should not have been provided to the District or released in the report.

59.     In response to Plaintiff's parents' communication about their concerns regarding the inclusion of confidential material, the District agreed to withdraw the draft reports and reissue them without the objectionable material.

60.     The confidential material, described in more detail *infra*, included detailed descriptions by Defendants Budnick and Bonnett of their respective confidential discussions with Plaintiff, including therapy sessions, that occurred on campus.

61.     The District was unable to claw back the draft reports from Respondent's parents, however, and Respondent's parents had the material until at least June 12, 2025, when Plaintiff's parents and Respondent's parents resolved the complaint through an "informal resolution" process precisely in order to ensure that material was destroyed.

62.     Following the reissuance of the draft reports on December 6, 2024, without the confidential material about Plaintiff's therapy sessions or conversations with the school counselor, Plaintiff's parents notified the District as to their concerns about the investigation's

flaws and the investigator's bias.

63.     Examples of deficiencies in the investigation of the complaint against Respondent, which demonstrate gender bias and/or lack of competence on the part of the investigator, included the following:

a.     Defendant McDonough deviated from standard practice of taking contemporaneous notes or recording the interview.

b.     Defendant McDonough failed to ask Plaintiff during her interview what method she would prefer to demonstrate the conduct that occurred, instead immediately asking Plaintiff to demonstrate on herself.

c.     Defendant McDonough asked inappropriate questions that a young child would not understand.

d.     Defendant McDonough failed to assess the credibility of Respondent's denials while providing extensive analysis regarding Plaintiff's supposed lack of credibility.

e.     Defendant McDonough failed to consider Respondent's willingness to apologize to Plaintiff as evidence that he was admitting to the alleged conduct.

f.     Defendant McDonough ignored evidence that bolstered Plaintiff's credibility, including the impact on her and the consistency among some of her statements.

g.     Defendant McDonough overstated minor inconsistencies among some of Plaintiff's statements.

h.     Defendant McDonough conflated Plaintiff's statements with the statements of Plaintiff's mother about Plaintiff's statements to her.

64.     Examples of deficiencies in the investigation of the complaint against Defendant Matlon, which demonstrate gender bias and/or lack of competence on the part of the investigator, included the following:

    a.  Defendant McDonough omitted numerous allegations that had been included in the complaint, leading to an incomplete investigation and analysis. Such omissions included (i) Defendant Matlon's premature notifications to Respondent regarding the report of misconduct, (ii) his premature determination to utilize informal resolution without consulting with Plaintiff's parents or the Title IX coordinator, (iii) his insistence that Plaintiff's parents speak with Respondent's parents, (iv) the specific concerns about which supportive measures (e.g., a safety plan, immediate access to counseling, or assignment to another classroom) he denied to Plaintiff (the allegation was instead framed much more broadly), (v) the specific concerns about Defendant Matlon's demeanor and dismissiveness (e.g., staring silently at Plaintiff's mother while putting a mint into his mouth), (vi) his failure to advise Plaintiff or her parents regarding the Title IX process or to refer the matter to the Title IX office, (vii) his premature and inadequate investigation, (viii) his questioning of Plaintiff twice without a support person or advisor present, and (ix) his failure to take notes regarding his interviews of Plaintiff.

    b.  Defendant McDonough failed to provide a notice allegations or notice of investigation to Plaintiff, which would have allowed Plaintiff's parents to identify the omission of key allegations before the investigation got underway.

    c.  Defendant McDonough's report did not closely scrutinize Defendant Matlon's

role, versus the superintendent's, in eventually providing some supportive measures, despite available evidence that it was the superintendent who prompted such action.

d.  Defendant McDonough failed to interview the superintendent or the Title IX coordinator regarding Defendant Matlon's conduct and decisions.

e.  Defendant McDonough failed to interview other key witnesses, including the school counselor whose services Defendant Matlon initially denied to Plaintiff.

f.  Defendant McDonough failed to ask key questions of Plaintiff, including about how he responded to her and his interactions with her.

g.  Defendant McDonough failed to follow up with Plaintiff's parents about Defendant Matlon's claims that he assured them about supportive measures and that he apologized on August 30 (when his apology did not come until several days later).

h.  Defendant McDonough failed to ask key questions of Defendant Matlon, including about his knowledge of and interactions with the Title IX office, his decision about the sufficiency of an apology from Respondent, his decision not to move either of the students to another classroom, his dismissive demeanor, the nature of his discussion with Respondent, or his training on Title IX and speaking with young children about sexual misconduct.

i.  Defendant McDonough highlighted credibility concerns regarding Plaintiff even though her credibility was largely irrelevant as to the allegations against Defendant Matlon.

65.     In both their response to the initial draft reports and their response to the reissued draft reports, Plaintiff's parents requested that the District assign a different investigator to the matter. These requests highlighted both Defendant McDonough's inexperience and incompetence as well as the risk that her exposure to the confidential material about Plaintiff could prejudice her against Plaintiff.

66.     The District repeatedly denied Plaintiff's parents' request for a new investigator.

67.     Upon requests from Plaintiff's parents, a notice of investigation was finally issued on February 7, 2025, regarding the complaint against Defendant Matlon, months after the complaint was filed and even the investigation report was produced.

**C. Dismissal and appeal of complaint against Matlon**

68.     On March 10, 2025, the District dismissed the complaint against Defendant Matlon, thus depriving Plaintiff of the Title IX process.

69.     Defendant Conklin issued the dismissal.

70.     On March 19, 2025, Plaintiff's parents submitted an appeal of the dismissal.

71.     The issues with the dismissal were identified in the appeal, evidence gender bias against Plaintiff, and included the following:

    a.   The dismissal characterized the complaint as alleging sexual harassment rather than sex discrimination.

    b.   The dismissal diverted the complaint to a procedure other than the one provided for in the non-discrimination policy, which would have provided a more rigorous and transparent process.

    c.   The dismissal totally ignored critical language in the notice of investigation that was eventually issued in February 2025 that explicitly identified

allegations of discrimination. The dismissal only listed the conduct at issue and did not preface it with the allegation of discriminatory motivation.

    d.   The District lacked an applicable policy on non-harassment sex discrimination, in violation of 34 CFR § 106.8(c).

    e.   The dismissal continued to omit allegations against Matlon, i.e., those identified in paragraph 64(a) *supra*, despite repeated communications from Plaintiff's parents that they wished to include such allegations.

    f.   The Title IX coordinator had issued the dismissal despite her demonstrated bias and numerous communications by Plaintiff's parents criticizing Defendant Conklin's handling of the matter.

    g.   The dismissal was issued March 7, 2025, six months into the investigation.

72. On April 24, 2025, the District's Assistant Superintendent Paula Rigney issued a letter describing the appeal determination made by a contracted appeal officer.

73. The appeal decision was riddled with problems, evidencing gender bias against Plaintiff:

    a.   The decision erroneously noted that the dismissal considered three different definitions of conduct that would violate policy. But all of those definitions related to harassment, not traditional discrimination, which is what Plaintiff alleged against Defendant Matlon. The decision also erred because the dismissal went on to clarify that it was only considering one of those three definitions, namely, traditional harassment.

    b.   It falsely equated the Title IX process with the other complaint process and thus determined there is no material impact from the dismissal.

c.   It considered the investigative report in assessing a decision about whether the allegations made out a Title IX complaint even though nothing in the dismissal indicated it was looking beyond the allegations themselves, nor would it have been appropriate for the dismissal to do so.

d.   It indicated Plaintiff provided no other evidence of bias on the part of the official who issued the dismissal, Defendant Conklin, thus completely ignoring that Plaintiff pointed out in her appeal other issues with how the Title IX coordinator handled the matter, e.g., the disclosures of confidential and private information without obtaining waivers.

74.   The District assigned the investigation, under a different (i.e., non-Title IX) District policy, to a new investigator from the same firm as Defendant McDonough.

75.   Defendant Conklin issued a new notice of investigation on March 31, 2025.

76.   Defendant Conklin issued an amended notice of investigation on June 9, 2025.

77.   The scope of the allegations in the new investigation – both the original notice and the amended notice – omitted allegations of discrimination by Defendant Matlon, despite repeated requests by Plaintiff's parents to include such allegations, once again demonstrating gender bias.

78.   Upon information and belief, Defendant Conklin determined the scope of the allegations in the new investigation.

79.   The amended notice of investigation indicated the investigation would be completed by June 30, 2025.

80.   On July 8, 2025, Plaintiff's parents were interviewed as part of the new investigation.

81. As of the date of the filing of this action, Plaintiff and her parents have not been advised of the outcome of the investigation of the complaint against Defendant Matlon, nor have they received any updates about the investigation since the time of their interview. This delay is further evidence of gender bias.

**D. Budnick's misconduct**

82. On September 16, 2024, Plaintiff spoke with Defendant Budnick during a therapy session conducted on the school campus to discuss the incident involving Respondent.

83. During the therapy session, Defendant Budnick suggested that Plaintiff show her, on Defendant Budnick's body, where and how Plaintiff was touched, essentially inviting Plaintiff to touch Defendant Budnick on her genitals.

84. Plaintiff touched Defendant Budnick on her thigh.

85. Defendant Budnick noted that Plaintiff reacted to this contact with fear and embarrassment.

86. Defendant Budnick then used against Plaintiff the fact that Plaintiff chose to touch Defendant Budnick on her thigh, rather than on her genitals, by accusing Plaintiff of lying about the incident involving Respondent.

87. Defendant Budnick did not discuss this approach or technique with Plaintiff's parents ahead of time; Plaintiff's parents learned about this conduct when Defendant McDonough's initial report, issued November 1, 2024, described the conduct.

88. After becoming aware of Defendant Budnick's conduct, the District nonetheless retained her services and continued to have her provide therapy sessions with students.

89. The District refused to connect Plaintiff with another therapist, despite the District's obligation to provide supportive measures and her obvious discomfort with continuing

to see Defendant Budnick. This refusal further evidences gender bias.

90.    Defendant Budnick's conduct toward Plaintiff evidences gender bias.

**E.  Breaches of confidentiality**

91.    Defendant Budnick disclosed the confidential contents of her therapy session with Plaintiff when she provided an investigative interview on September 26, 2024, to Defendant McDonough without receiving any waiver, written or otherwise, from Plaintiff's parents.

92.    School counselor Defendant Bonnett similarly disclosed the confidential contents of her counseling session with Plaintiff when she provided an investigative interview on September 13, 2024, to Defendant McDonough without receiving any waiver, written or otherwise, from Plaintiff's parents.

93.    Defendant McDonough sought confidential information from Defendant Budnick and Defendant Bonnett, without a waiver from Plaintiff's parents. She then included the confidential information in the draft investigation report issued on November 1, 2024, which was provided to the student-respondent's parents and District personnel.

94.    Defendant Conklin failed to intervene when the investigator sought the interviews with Defendants Budnick and Bonnett.

95.    Defendant Conklin then allowed the draft investigation report to go out to the parties, including Respondent's parents, with the confidential material included.

96.    Other Defendants, DOES, also participated in the release of the draft reports containing the confidential information.

97.    The confidential information included information Plaintiff shared with Defendant Budnick, during multiple sessions, about the incident with Respondent, her feelings about the incident, how she felt about continuing to be in her classroom, whether Plaintiff was

lying, her general feelings about lying, her feelings about herself, how she touched Defendant Budnick, and her feelings about having touched Defendant Budnick. This information was used to portray Plaintiff as changing her account, performing, or even lying.

98.    The confidential information included information Plaintiff shared with Defendant Bonnett, during multiple sessions, about her characterizations of the incident, her feelings following the incident, specific coping tools she used, her relationship with her mother, and a second incident with the Respondent involving taunting. This information was used to portray Plaintiff as changing her account or even lying.

99.    Upon information and belief, Defendants released this confidential information as retaliation for what they believed, albeit erroneously, to be false or exaggerated reporting by Plaintiff regarding the incident with Respondent.

100.    The disclosures of confidential information evidence gender bias.

## VII.    DAMAGES

101.    As a direct and proximate result of aforesaid acts and omissions, and the customs, practices, policies and decisions of the defendants alleged in this complaint, Plaintiff suffered and will continue to suffer great emotional, mental and physical pain and injuries, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused and will continue to cause, Plaintiff to sustain general damages in a sum to be determined at trial.

102.    Plaintiff has experienced profound institutional betrayal by trusted professionals and administrators at multiple levels, causing her significant trauma and emotional distress that compounded the trauma she experienced as a result of the underlying harassment and sexual misconduct.

103.    Defendants acted in a manner that was willful, wanton, malicious and oppressive, with reckless disregard of or in deliberate indifference to and with the intent to deprive Plaintiff of her constitutional rights, and did in fact violate the aforementioned rights, entitling Plaintiff to exemplary and punitive damages in an amount to be proven at the trial in this matter. Plaintiff also seeks attorneys' fees.

## VIII.   CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES – EQUAL PROTECTION (42 U.S.C. § 1983)**

**(Against All Defendants Except District)**

104.    Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

105.    The Equal Protection Clause of the Fourteenth Amendment prohibits states from denying any person the equal protection of the laws. *See* U.S. Const. amend. XIV, § 1.

106.    Under the Equal Protection Clause, if a law or regulation burdens a fundamental right to some groups but not others, the law or regulation can be upheld only if the government can justify it under strict scrutiny. *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 17 (1973). To survive strict scrutiny, the government must demonstrate that the law or regulation is "'narrowly tailored' to serve a 'compelling' government interest." *See e.g., Parents Involved in Cmty. Schs. v. Seattle Sch. Dist.*, 551 U.S. 701, 720 (2007) (quoting *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995)).

107.    As described hereinabove, Defendants applied policies and procedures and the law of California in a manner that discriminated against Plaintiff based on her sex and on her status as a victim of gender-based violence.

108.    Defendants discriminated against Plaintiff on the basis of sex by subjecting her to a hostile environment, minimizing and/or dismissing the abuse Plaintiff experienced, disclosing confidential information, and failing to prevent, appropriately respond to, and properly investigate reports of sexual misconduct against Plaintiff. Defendants' discrimination against Plaintiff on the basis of sex endangered the safety, privacy, security, and well-being of Plaintiff. Defendants' actions and inactions deprived Plaintiff of her right to equal dignity, liberty, and autonomy by treating her as second-class citizen at the District.

109.    As a direct and proximate result of Defendants' actions, as alleged herein, Plaintiff was injured as set forth above and is entitled to damages, including compensatory and punitive damages, in an amount to be proven at trial and in excess of the jurisdictional amount required by this Court.

## SECOND CLAIM FOR RELIEF

## FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES – DUE PROCESS (42 U.S.C. § 1983)

### (Against All Defendants Except District)

110.    Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

111.    The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits states from depriving any person of life, liberty, or property, without due process of law. *See* U.S. Const. amend. XIV, § 1.

112.    The Due Process Clause has both procedural and substantive components, which function to safeguard fundamental liberty interests like the right of access to the courts, and also mandate that certain procedures be followed before the government deprives someone of such an interest. *See Washington v. Glucksberg*, 521 U.S. 702, 719–20 (1997) ("The Due Process Clause guarantees more than fair process . . . [it] also provides heightened protection against government interference with certain fundamental rights and liberty interests.").

113.    By failing to protect Plaintiff from misconduct (Defendant Matlon and DOES); disclosing confidential and private information (Defendants Conklin, McDonough, Budnick, Bonnett, and DOES); failing to implement a safety plan to prevent further harm (Defendant Matlon and DOEs); and failing to properly respond with supportive measures (Defendants Matlon, Kaufman, Conklin, and DOES) and an appropriate investigation consistent with the requirements of Title IX (Defendants Conklin, McDonough, and DOES), Defendants infringed the fundamental liberty interests of Plaintiff to privacy, bodily integrity, freedom from violence and physical harm, and a process to petition the government for redress of grievances, in violation of substantive due process. *See Ringgold-Lockhart v. Cnty. Of Los Angeles*, 761 F.3d 1057, 1061 (9th Cir. 2014) ("[T]he right of access to the courts is a fundamental right protected by the Constitution."); *see also BE & K Constr. Co. v. N.L.R.B.*, 536 U.S. 516, 524– 25 (2002) (describing right to petition as "one of the most precious of the liberties safeguarded by the Bill of Rights").

114.    *Procedural* due process requires that the government be constrained before it acts in a way that deprives a person of liberty interests protected under the Due Process Clause of the Fourteenth Amendment. *See Matthews v. Eldridge*, 424 U.S. 319, 332 (1976). A procedural due process claim requires: "(1) a protect[ed] liberty or property interest . . . and (2) a denial of

adequate procedural protections." *Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 588 (9th Cir. 1998).

115.     In violation of her right to procedural due process, Plaintiff was not provided with notice or an opportunity to be heard before being deprived of her rights by Defendants. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950).

116.     Defendants Conklin, Matlon, Kaufman, and McDonough denied Plaintiff an impartial and thorough investigation free from bias and retaliation and that ensures other procedural protections.

117.     Defendants Conklin, McDonough, Bonnett, and Budnick provided and/or accessed private and confidential information without providing Plaintiff any notice or opportunity to challenge.

118.     As a direct and proximate result of Defendants' actions, as alleged herein, Plaintiff was injured as set forth above and is entitled to damages, including compensatory and punitive damages, in an amount to be proven at trial and in excess of the jurisdictional amount required by this Court.

### THIRD CLAIM FOR RELIEF

**FIRST AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES – RETALIATION (42 U.S.C. § 1983)**

**(Against Defendants Matlon, Conklin, McDonough, and Budnick)**

119.     Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

120.     Defendants deprived Plaintiff of her right to be free from interference with, or retaliation for, their exercise of constitutionally protected rights, including but not limited to

speech and the right to petition the government, as secured by the First and Fourteenth Amendments.

121.    By disclosing confidential information, Defendants Conklin, McDonough, Bonnett, and Budnick retaliated against Plaintiff when she engaged in the Title IX process by reporting sexual misconduct she experienced.

122.    By refusing basic supports and seeking to close the matter prematurely, Defendant Matlon retaliated against Plaintiff when she reported sexual misconduct.

123.    As a direct and proximate result of Defendants' actions, as alleged herein, Plaintiff was injured as set forth above and is entitled to damages, including compensatory and punitive damages, in an amount to be proven at trial and in excess of the jurisdictional amount required by this Court.

## FOURTH CLAIM FOR RELIEF

### Supervisory Liability

### (42 U.S.C. § 1983; 1st and 14th Amendments)

### (Against Defendants Kaufman, Conklin, Matlon, and DOES)

124.    Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

125.    Defendants Kaufman, Conklin, Matlon, and DOES acted in a supervisory capacity under color of law.

126.    The acts and failures of Defendants were a cause of the discrimination against and denial of due process to Plaintiff.

127.    As supervisors, Defendants disregarded the known or obvious consequences that deficiencies in policies and training for their subordinates posed to victims of sexual misconduct, and those deficiencies would cause their subordinates to violate Plaintiff's rights.

128.    The conduct of Defendants, as described above, were so closely related to the deprivation of Plaintiff's constitutional rights as to be the moving force behind permitting staff to violate Plaintiff's rights.

129.    Defendants engaged in conduct that showed a deliberate, reckless, or callous indifference to the deprivation by their subordinates of the rights of others.

130.    Defendants Kaufman and DOES failed to intervene to prevent and/or address Defendant Conklin's and Defendant Matlon's discrimination and retaliation against Plaintiff, thus acting with deliberate indifference to Plaintiff's right to be free from such retaliation.

131.    Defendant Conklin was Defendant McDonough's supervisor regarding Defendant McDonough's investigation and failed to intervene regarding the investigation's deficiencies, including when Plaintiff's parents alerted her to such deficiencies and despite the obvious deficiencies.

132.    Defendant Conklin failed to intervene when Defendant McDonough discriminated and retaliated against Plaintiff in her conduct of the investigations and disclosed confidential and private information about Plaintiff, thus acting with deliberate indifference to Plaintiff's right to be free from such retaliation and breaches of confidentiality.

133.    Defendant Kaufman was responsible for supervising Defendant Conklin regarding her dismissal decision and those involved in the appeal decision, despite the obvious errors in these decisions.

134.    Defendant Conklin failed to intervene regarding the appeal decision, despite the obvious errors in that decision, thus acting with deliberate indifference.

135.    Defendants Matlon, Kaufman and DOES supervised staff at Old Mill, including Defendants Budnick, Bonnett, and DOES, and acted with deliberate indifference to Plaintiff's safety and rights when they failed to intervene to prevent and address the disclosures of confidential and private information, ensure proper conduct by Defendant Budnick during her therapy sessions, and provide Plaintiff's teacher with the necessary information to protect Plaintiff from Respondent's misconduct.

136.    As a direct and proximate result of Defendants' actions, as alleged herein, Plaintiff was injured as set forth above and is entitled to damages, including compensatory and punitive damages, in an amount to be proven at trial and in excess of the jurisdictional amount required by this Court.

**FIFTH CLAIM FOR RELIEF**

*Monell*: **42 U.S.C. § 1983**

**(Against Defendant District)**

137.    Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

138.    Pursuant to 42 U.S.C. § 1983, a local government may be liable for constitutional torts committed by its officials according to municipal policy, practice, or custom." *Weiner v. San Diego Cnty.*, 210 F.3d 1025, 1028 (9th Cir. 2000) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)).

139.    "To hold a local government liable for an official's conduct, a plaintiff must first establish that the official (1) had final policymaking authority concerning the action . . . at issue

and (2) was the policymaker for the local governing body for the purposes of the particular act." *Id.* at 1028 (citing *McMillian v. Monroe Cnty.*, 520 U.S. 781, 785 (1997)).

140.    Plaintiff was deprived by the District of her constitutional rights to equal protection of the law and due process of law under the Fourteenth Amendment and to be free from retaliation under the First Amendment.

141.    On information and belief, the deprivation of Plaintiff's rights was part of a continuing, persistent, and widespread custom and practice by the District of failing to comply with its obligations to protect and respond to reports of sexual misconduct of female students, including with respect to Plaintiff; deny transfer of alleged victims to other classrooms to avoid remaining in the same class with potential perpetrators of sexual misconduct and prevent further misconduct; ensure safe and appropriate implementation of supportive measures, including therapy; and ensure proper oversight of the complaint investigation process for discrimination allegations.

142.    On information and belief, the District has failed to issue policies and has failed to train, supervise, and discipline its employees and students to ensure they operate in manner that (a) protects the due process rights of victims of sexual misconduct, (b) does not treat similarly situated victims differently on the basis of sex and/or status as a victim of sexual misconduct, (c) does not entail unlawful retaliation. The actions of individual Defendants in Plaintiff's case alone demonstrate such a lack of training, supervision, and discipline.

143.    The District's failure to develop and implement policies and to train, supervise, and discipline its employees and students reflects deliberate indifference to the constitutional rights of female students and students who have experienced gender-based harassment.

144.    The District's failure to issue and implement policies and to train, supervise, and discipline its employees with respect to protecting students from sexual misconduct, responding properly to reports of sexual misconduct, offering and implement supportive measures, investigating and adjudicating complaints of sexual misconduct, and providing adequate oversight and coordination of the District's responses to reports of sexual misconduct constitutes a policy or custom that set in motion the violations of Plaintiff's rights and continued despite the District's knowledge that the constitutional rights of female victims were being violated.

145.    The District's hiring and retention of unqualified and biased personnel to investigate and adjudicate complaints of sexual misconduct constitutes a policy or custom that set in motion the violations of Plaintiff's rights and continued despite the District's knowledge that the constitutional rights of female victims were being violated.

146.    The unconstitutional actions and/or omissions of Defendants and other personnel, as described above, were known, and were ordered, approved, tolerated, and/or ratified by policy-making officials for the District, including but not limited to Defendants Kaufman, Matlon, and Conklin.

147.    Plaintiff is accordingly entitled to a judgment declaring that the District's policies and procedures have caused violations of her constitutional rights.

148.    The aforementioned customs and failures of the District to provide adequate policies, training, supervision, and discipline regarding employees' obligations to provide equal protection to female students caused the deprivation of the aforementioned rights of Plaintiff by Defendants, that is, the District's failure to ensure proper customs and policies and to train, supervise, and discipline is so closely related to the deprivation of the Plaintiff's rights as to be the moving force that caused the ultimate injury.

149.    As a direct and proximate result of Defendants' actions, as alleged herein, Plaintiff was injured as set forth above and is entitled to damages, including compensatory and punitive damages, in an amount to be proven at trial and in excess of the jurisdictional amount required by this Court.

<u>**SIXTH CLAIM FOR RELIEF**</u>

**TITLE IX – DELIBERATE INDIFFERFENCE TO SEXUAL MISCONDUCT**

**(Against Defendant District)**

150.    Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

151.    Title IX of the Education Amendments of 1972 provides, in relevant part: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

152.    Title IX of the Education Amendments of 1972 applies to all public educational institutions that receive federal funding, including Defendant District.

153.    The District receives federal funding.

154.    Defendant was deliberately indifferent to sexual misconduct committed by a student and by Defendant Budnick at Old Mill against Plaintiff and other sex-based discrimination against Plaintiff through the inadequate responses to the report of sexual harassment.

155.    The District created and/or subjected Plaintiff to a hostile educational environment in violation of Title IX because:

a.    Plaintiff was subjected to sex-based discrimination; and

b.  Plaintiff was subjected to a hostile educational environment created by
Defendant's lack of policies and procedures and failure to investigate, prevent,
and/or address the sexual misconduct and harassment perpetrated on Plaintiff.

156.    The District had actual knowledge of the sex-based discrimination, which was created and furthered by Defendant's repeated failure to protect Plaintiff consistent with its own policies and federal law and guidance.

157.    The District acted with deliberate indifference to the acts of sex-based discrimination by failing to take any action to prevent them, deter those responsible, and/or protect Plaintiff from sexual misconduct.

158.    The District also acted with deliberate indifference to acts of sexual misconduct by failing to take immediate, effective remedial steps to resolve Plaintiff's allegations of sex-based discrimination.

159.    The District's repeated failure to promptly and appropriately respond to the sexual misconduct Plaintiff experienced resulted in Plaintiff, on the basis of her sex, being excluded from participation in, being denied the benefits of, and being subjected to discrimination in the District's educational programs and activities, in violation of Title IX.

160.    The District acted intentionally and with deliberate indifference to the repeated denial of Plaintiff's access to educational opportunities or benefits. The District's violation of its duty to Plaintiff arises from their systemic failure to properly enforce Title IX. Pursuant to the District's official policy, practice, and/or custom of deliberate indifference, they cultivated a culture of tolerance for sexual misconduct by failing to report complaints of sex-based discrimination, initiate and/or conduct adequate investigations and grievance procedures under Title IX, and ensure victimized students had equal access to educational opportunities and

benefits, supportive measures, or grievance procedures.

161.    The sex discrimination Plaintiff experienced, and the subsequent Title IX failures by the District, were so severe, pervasive, and objectively offensive that Plaintiff was denied equal access to the District's educational opportunities and benefits, as she changed schools.

162.    As a direct and proximate result of the above conduct, Plaintiff sustained damages including, without limitation, loss of educational opportunities, reputational damages, economic injuries, and other direct and consequential damages.

### SEVENTH CLAIM FOR RELIEF

### TITLE IX – PROMPT AND EQUITABLE INVESTIGATION

### (Against Defendant District)

163.    Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

164.    "A recipient must adopt and publish grievance procedures that provide for the prompt and equitable resolution of student and employee complaints alleging any action that would be prohibited by this part." 34 C.F.R. § 106.8(c) (2020).

165.    The Title IX regulations require that the grievance process "[r]equire that any individual designated by a recipient as a Title IX . . . investigator . . . not have a conflict of interest or bias for or against complainants or respondents generally or an individual complainant or respondent." 34 CFR § 106.45(b)(1)(iii); *see also* 34 CFR § 106.45(b)(1)(ii) (requiring that the grievance process "[r]equire an objective evaluation of all relevant evidence—including both inculpatory and exculpatory evidence— and provide that credibility determinations may not be based on a person's status as a complainant, respondent, or witness").

166.    As described herein *supra*, the investigator whom the District hired demonstrated

gender bias against Plaintiff and failed to operate in a neutral manner.

167.    As described herein *supra*, the grievance process did not entail an objective evaluation of all relevant evidence or an objective determination of the parties' or other witnesses' credibility, further implying gender bias against Plaintiff.

168.    Title IX further requires that the grievance process "[p]rovide an equal opportunity for the parties to present witnesses, including fact and expert witnesses, and other inculpatory and exculpatory evidence." 34 CFR § 106.45(b)(5)(ii).

169.    As described herein *supra*, the District's grievance process did not provide an equal opportunity for Plaintiff to present evidence and witnesses, further gender bias against Plaintiff.

170.    The decision maker, too, must be free of any conflict of interest or bias, 34 CFR § 106.45(b)(1)(iii).

171.    As described herein *supra*, the decision maker was not free of bias or conflict of interest, further implying gender bias against Plaintiff.

172.    Title IX requires that the grievance process "[i]nclude reasonably prompt time frames for conclusion of the grievance process." 34 CFR § 106.45(b)(1)(v).

173.    As described herein *supra*, the investigation took an unreasonably long time to complete, further implying gender bias.

174.    The school district "must keep confidential the identity of . . . any individual who has been reported to be the perpetrator of sex discrimination" and of "any respondent." 34 CFR § 106.71(a).

175.    As described herein *supra*, the District failed to keep confidential highly private and sensitive information Plaintiff shared in the context of a privileged therapeutic relationship.

176.    Gender bias can be inferred from these improper disclosures of Plaintiff's confidential information.

177.    Defendant failed to ensure a prompt and equitable investigation of Plaintiff's allegations of sexual misconduct and sex discrimination.

178.    Defendant discriminated against Plaintiff on the basis of sex by denying her the ability to participate fully in the Title IX grievance process as complainant while allowing the accused student to participate fully as respondent, counter to her right to an equitable grievance process under Title IX.

179.    Gender bias can be inferred from the procedural flaws in the conduct process identified herein.

180.    As a direct and proximate result of the above conduct, Plaintiff sustained damages including, without limitation, loss of educational opportunities, reputational damages, economic injuries, and other direct and consequential damages.

## EIGHTH CLAIM FOR RELIEF

### TITLE IX – ERRONEOUS OUTCOME

### (Against Defendant District)

181.    Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

182.    Under 34 U.S.C. § 106.45(b)(3)(i), dismissal of the allegations was required if those allegations, even if proven to be true, would not constitute sexual harassment ("If the conduct alleged in the formal complaint would not constitute sexual harassment as defined in § 106.30 even if proved . . ., then the recipient *must* dismiss the formal complaint with regard to that conduct for purposes of sexual harassment under title IX or this part." (emphasis added)).

183.    The District erroneously dismissed the complaint against Defendant Matlon and affirmed the dismissal on appeal.

184.    The District constructively forced Plaintiff to terminate the investigation of the complaint against Respondent because of the numerous flaws in the investigation and the District's failure to claw back the disclosed confidential materials, which Plaintiff could only accomplish through informal resolution.

185.    As a result of the determination and dismissal, the District issued no remedies or sanctions, allowing the respondents to avoid consequences of their abuse and discrimination against Plaintiff.

186.    The improper dismissal of Plaintiff's complaints demonstrated gender bias.

187.    As a direct and proximate result of the above conduct, Plaintiff sustained damages including, without limitation, loss of educational opportunities, reputational damages, economic injuries, and other direct and consequential damages.

**NINTH CLAIM FOR RELIEF**

**TITLE IX – HOSTILE ENVIRONMENT / DENIAL OF SUPPORTIVE MEASURES**

**(Against Defendant District)**

188.    Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

189.    Under 34 CFR § 106.30:

Supportive measures means nondisciplinary, non-punitive individualized services offered as appropriate [and] as reasonably available . . . before or after the filing of a formal complaint or where no formal complaint has been filed. Such measures are designed to restore or preserve equal access to the recipient's education program or activity without unreasonably burdening the other party, including measures designed to protect the safety of all parties or the recipient's educational environment, or deter sexual harassment. Supportive measures may include counseling, extensions of deadlines or other course-related adjustments

[or] modifications of work or class schedules.

190.    The district must "consider the complainant's wishes with respect to supportive measures [and] inform the complainant of the availability of supportive measures with or without the filing of a formal complaint." 34 CFR § 106.44.

191.    Denial of supportive measures, including the traumatic therapy session provided to Plaintiff, constituted deliberate indifference to Plaintiff's safety and right to be free from sexual misconduct, evidences gender-based discrimination, and constitutes a violation of Title IX.

192.    By denying supportive measures or providing supportive measures that were themselves harmful to Plaintiff, Defendant District cultivated and perpetuated a sexually hostile environment that impeded and effectively denied Plaintiff's equal access to educational opportunities and benefits.

193.    Defendant District is also liable for its failure to remedy the hostile educational environment experienced by Plaintiff by failing to offer Plaintiff appropriate interim measures and accommodations that could have provided Plaintiff with equal access to educational opportunities and benefits.

194.    As a direct and proximate result of the above conduct, Plaintiff sustained damages including, without limitation, loss of educational opportunities, reputational damages, economic injuries, and other direct and consequential damages.

## TENTH CLAIM FOR RELIEF

### TITLE IX – RETALIATION

### (Against Defendant District)

195.    Plaintiff realleges all prior paragraphs of this complaint and incorporates the same

herein by this reference.

196.    Title IX prohibits retaliation, including "a report or formal complaint of sexual harassment, for the purpose of interfering with any right or privilege secured by title IX or this part." 34 CFR § 106.71(a).

197.    The school district "must keep confidential the identity of . . . any individual who has been reported to be the perpetrator of sex discrimination" and of "any respondent." *Id.*

198.    The District retaliated against Plaintiff by disclosing private and confidential information about Plaintiff in response to her addressing allegations of harassment and discrimination.

199.    The District also retaliated against Plaintiff when Defendant Matlon failed to take appropriate action in response to the report of sexual misconduct.

200.    As a direct and proximate result of the above conduct, Plaintiff sustained damages including, without limitation, loss of educational opportunities, reputational damages, economic injuries, and other direct and consequential damages.

## ELEVENTH CLAIM FOR RELIEF

### NEGLIGENT SUPERVISION, TRAINING AND STAFFING

### Cal. Civil Code 1714, Cal. Gov. Code § 844.6(d)

### (Against Defendants District, Kaufman, Matlon, Conklin, and DOES)

201.    Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

202.    Defendants had a duty to properly supervise, train, and monitor their employees and to ensure those employees' compliance with all applicable statutes, laws, regulations, and institutional policies, but they failed to do so and therefore breached the duties of care owed to

Plaintiffs as alleged herein. Each of these duties to supervise, train, and monitor included the duty to ensure that the Title IX and other relevant policies were followed to prevent, properly respond to, and remedy incidents of sex-based discrimination.

203.    Defendant District had a duty to supervise, train, and monitor the actions of Defendant Kaufman and Defendant Conklin.

204.    Defendants Kaufman and DOES had a duty to supervise, train, and monitor the actions of Defendants Conklin and Matlon.

205.    Defendant Conklin had a duty to supervise, train, and monitor the actions of Defendants McDonough to ensure compliance with the Title IX regulations and the District's policies.

206.    Defendants Kaufman, Matlon, and DOES had a duty to supervise, train, and monitor the actions of Defendant Budnick and Plaintiff's teacher to ensure compliance with the Title IX regulations and the District's policies.

207.    Defendants improperly, negligently, wrongfully, and recklessly failed to supervise and train their subordinates to ensure that their subordinates did not violate Plaintiff's rights.

208.    In executing these duties, Defendants additionally owed a duty to exercise reasonable care in the hiring, supervising, and retaining of their employees. This duty includes ensuring that staff are competent in performing their duties. District and school administrators must ensure that school employees follow policies and procedures and that such employees have the requisite knowledge and training.

209.    As an educational institution for minors, where all of the students are entrusted to the counselors, advisors, mentors, coaches, faculty members, administrators and teachers, Defendants expressly and implicitly represented that these individuals would supervise, control,

direct, and guide all students in the District's care while in loco parentis.

210.    Defendants Kaufman, Conklin, Matlon and DOES owed a duty of care to all reasonably foreseeable people, including Plaintiff, to adequately and properly investigate, screen, hire, train, monitor, place, evaluate, and supervise their instructors and employees to protect their students from harm caused by other minor students and adults on their school's premises. These Defendants negligently failed to fulfill this duty of care.

211.    Defendants Conklin and DOES failed to ensure that Defendant McDonough and the appeal officer received the supervision necessary to conduct a fair, unbiased, and thorough investigation into and/or adjudication of the sexual misconduct and discrimination allegations. They failed to intervene when these individuals submitted reports and/or determinations that contained numerous critical omissions and content.

212.    Defendants Kaufman, Conklin, Matlon and DOES failed in their duty to supervise Defendant Budnick to ensure appropriate implementation of supportive measures.

213.    Defendants Kaufman and DOES failed in their duty to supervise Defendants Matlon and Conklin to ensure appropriate implementation of supportive measures

214.    Plaintiff is informed, believes, and alleges that Defendants failed in their duty to investigate properly and adequately, screen, hire, train, monitor, place, evaluate, and supervise and were negligent and reckless in hiring and/or retaining instructors and employees to protect students, such as Plaintiff, from harm caused by other students.

215.    Plaintiff is informed, believes, and thereon alleges that Defendants should have known that their instructors, employees, and contractors were unfit for the specific tasks to be performed during the course of their employment and posed a danger to students under their custody and care.

216.    Plaintiff is informed, believes, and alleges that Defendants were negligent and/or reckless by failing to provide any or sufficient training and/or supervision of the District's employees after hiring them and were negligent in their retention of employees who failed to perform their jobs following California and Federal Law vis-à-vis the protection, safety, and well-being of the children in their custody and care. This includes failing in their job performance, which included supervising students and investigating acts of bullying and harassment.

217.    By engaging in the acts alleged herein, Defendants failed to act with ordinary care and breached their duty of care owed to Plaintiff.

218.    As a direct and proximate result of Defendants' actions, as alleged herein, Plaintiff was injured as set forth above and is entitled to damages, including compensatory and punitive damages, in an amount to be proven at trial and in excess of the jurisdictional amount required by this Court.

## TWELFTH CLAIM FOR RELIEF

## NEGLIGENCE AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

## Cal. Civil Code 1714, Cal. Gov. Code § 844.6(d)

## (Against All Defendants Except Defendant Kaufman)

219.    Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

220.    Defendants had a duty to exercise reasonable and prudent care in the conduct of their activities, or omissions to act, to avoid harm and injury to those students in their care and to ensure a safe and lawful environment at the schools, which included, among other things, a duty to investigate all claims of sexual abuse, harassment, and other forms abuse according to Title

IX, the California Education Code, and the California Civil Code (Defendants Conklin, Matlon, and McDonough), to provide supportive measures (Defendants Matlon, Conklin, Budnick, Bonnett, and DOES), and to prevent (Defendant Matlon) or refrain from engaging in abuse (Defendant Budnick) to ensure equal access to the educational environment. Each defendant negligently, or otherwise wrongfully, failed to act with reasonable care, and their negligence, or other wrongful conduct, was a substantial factor in causing the harm to Plaintiff as alleged herein.

221.    Due to these acts and failures to act, Defendants are liable for the injuries and damages to Plaintiff under the California Education Code, including, but not limited to Section 44807, and under the California Government Code, including, but not limited to, Sections 815.2(a), 815.4, 815.6, 820(a), and/or 835.

222.    Defendants' actions were the cause-in-fact of Plaintiff's injury and emotional distress, and the risk of injuring Plaintiff was within the scope of duty that was breached by Defendants' decision to retaliate against Plaintiff or to conduct or permit flawed investigations and disciplinary processes that resulted in Plaintiff's exclusion from critical aspects of her education while at the District.

223.    Defendant McDonough failed to conduct fair, unbiased, and thorough investigations into Plaintiff's allegations of sexual misconduct. As a neutral investigator operating at the behest of and under the auspices of the District, Defendant McDonough had a duty to ensure a neutral and fair investigation and to treat a potential victim with dignity.

224.    Defendants Conklin, Budnick, Bonnett, and McDonough negligently disclosed or permitted the disclosure of confidential information about Plaintiff. They had a duty to protect such information.

225.    Defendant Conklin failed in her duty to objectively, neutrally, and fairly render decisions regarding Plaintiff's allegations of sex discrimination.

226.    Defendant Budnick failed in her duty to provide appropriate therapy to Plaintiff and to refrain from abusive conduct.

227.    By engaging in the acts alleged herein, all Defendants failed to act with ordinary care and breached their duty of care owed to Plaintiff.

228.    As a direct and proximate result of Defendants' actions, as alleged herein, Plaintiff was injured as set forth above and is entitled to damages, including compensatory and punitive damages, in an amount to be proven at trial and in excess of the jurisdictional amount required by this Court.

## THIRTEENTH CLAIM FOR RELIEF

### RESPONDEAT SUPERIOR

### (Against Defendant District)

229.    Plaintiff realleges and incorporates each and every foregoing paragraph.

230.    At all times material, Defendants Kaufman, Matlon, Conklin, Budnick, Bonnett, and DOES were on the premises of the District and privileged to be on the premises by virtue of their employment with the District.

231.    At all times material, Defendant McDonough was contracted to provide services on behalf of the District. When she took the prohibited actions against Plaintiff, she was an employee and/or agent of Defendant District acting within the scope of her employment.

232.    Defendant District is therefore liable for all torts committed by their agents, in this case all other Defendants.

233.    As a direct and proximate result of Defendants' actions, as alleged herein,

Plaintiff was injured as set forth above and is entitled to damages, including compensatory and punitive damages, in an amount to be proven at trial and in excess of the jurisdictional amount required by this Court.

## FOURTEENTH CLAIM FOR RELIEF

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**(Against Defendants Conklin, Matlon, McDonough, Bonnett, and Budnick)**

234.     Plaintiff realleges and incorporates each and every foregoing paragraph.

235.     Plaintiff alleges intentional infliction of emotional distress by Defendants Conklin Matlon, McDonough, and Budnick in their response to reports of sexual misconduct, discrimination, and/or retaliation.

236.     By mishandling Plaintiff's report (Defendant Matlon), conducting or allowing biased and inadequate investigations into Plaintiff's reports of sexual misconduct (Defendants Conklin and McDonough), retaliating against Plaintiff (Defendants Conklin, Bonnett, McDonough, and Budnick), denying supportive measures to Plaintiff (Defendant Matlon), and enlisting Plaintiff to touch her (Defendant Budnick's) body (Defendant Budnick), Defendants engaged in extreme and outrageous conduct. Defendants specifically intended for their conduct to cause Plaintiff to suffer emotional distress so severe that it would silence any additional disclosures.

237.     As a direct and proximate result of Defendants' actions, as alleged herein, Plaintiff was injured as set forth above and is entitled to damages, including compensatory and punitive damages, in an amount to be proven at trial and in excess of the jurisdictional amount required by this Court.

//

**FIFTEENTH CLAIM FOR RELIEF**

**SEX DISCRIMINATION (Violation of Ed. Code §220)**

**(Against All Defendants)**

238.    Plaintiff realleges and incorporates each and every foregoing paragraph.

239.    California Education Code, Section 220, provides that "No person shall be subjected to discrimination on the basis of disability, gender, gender identity, gender expression, nationality, race or ethnicity, religion, sexual orientation, or any other characteristic that is contained in the definition of hate crimes set forth in Section 422.55 of the Penal Code…."

240.    As is hereinabove described, Plaintiff was harassed and discriminated against based on sex.

241.    Plaintiff suffered harassment and discrimination that was so severe, pervasive, and offensive that it effectively deprived her of the right of equal access to educational benefits and opportunities.

242.    As a direct and proximate result of Defendants' actions, as alleged herein, Plaintiff was injured as set forth above and is entitled to damages, including compensatory and punitive damages, in an amount to be proven at trial and in excess of the jurisdictional amount required by this Court.

**SIXTEENTH CLAIM FOR RELIEF**

**UNRUH ACT (Violations of Civil Code §51)**

**(Against Defendant District)**

243.    Plaintiff realleges and incorporates each and every foregoing paragraph.

244.    Under the Unruh Act, "All persons . . . are free and equal, and no matter what their sex, . . . are entitled to the full and equal accommodations, advantages, facilities, privileges,

or services . . . ."

245.    As is hereinabove described, Plaintiff was harassed and discriminated against based on sex.

246.    Plaintiff suffered harassment and discrimination that was so severe, pervasive, and offensive that it effectively deprived her of the right of equal access to educational and other benefits, services, supports, and opportunities.

247.    As a direct and proximate result of the actions of Defendant District, as alleged herein, Plaintiff was injured as set forth above and is entitled to damages, including compensatory and punitive damages, in an amount to be proven at trial and in excess of the jurisdictional amount required by this Court.

## SEVENTEENTH CLAIM FOR RELIEF

### BANE ACT (Violations of Civil Code §52.1)

### (Against Defendant Budnick)

248.    Plaintiff realleges and incorporates each and every foregoing paragraph.

249.    Defendant Budnick interfered by threats, intimidation, or coercion, with the exercise or enjoyment by Plaintiff of rights secured by the Constitution or laws of the United States and of the state of California.

250.    The Fourteenth Amendment to the U.S. Constitution guarantees an individual's rights to equal treatment and due process.

251.    Plaintiff has a Federal and State Constitutional Right to attend school free of violence, harassment, and bullying.

252.    It is also a basic principle of Constitutional law that the First Amendment guarantees the right to petition the government to redress grievances and to be free from

unlawful retaliation.

253.    By engaging in the acts alleged above, Defendant denied those rights and other rights to Plaintiff, thus giving rise to claims for damages pursuant to California Civil Code section 52.1.

254.    Section 52.1(b) prohibits interference "by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual . . . of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state."

255.    Defendant interfered with or attempted to interfere with Plaintiff's rights to her education, equal access thereto, bodily integrity, and other rights identified herein by intimidating and attempting to coerce her to touch her (Defendant Budnick's) genitals.

256.    As a direct and proximate result of Defendant's actions, as alleged herein, Plaintiff was injured as set forth above and is entitled to damages, including compensatory and punitive damages, in an amount to be proven at trial and in excess of the jurisdictional amount required by this Court.

257.    In conducting themselves as alleged herein, Defendant was acting within the course and scope of their employment with Defendant District. Thus, the District is responsible for Defendant's actions.

## EIGHTEENTH CLAIM FOR RELIEF

### GENDER VIOLENCE (Violations of Civil Code §52.4)

### (Against Defendants Budnick, Kaufman, Matlon, and DOES)

258.    Plaintiff realleges and incorporates each and every foregoing paragraph.

259.    The sexual misconduct directed at Plaintiff by Defendant Budnick constituted a

criminal offense under California law that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, committed at least in part based the gender of the victim, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction

260.    The sexual misconduct directed at Plaintiff as herein above alleged, was a physical intrusion or physical invasion of a sexual nature under coercive conditions, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

261.    Defendants Budnick, Kaufman, Matlon, and DOES are "responsible part[ies]" under the statute, as they failed to properly supervise and prevent the acts by the individuals who engaged in the sexual misconduct against Plaintiff.

262.    As a direct and proximate result of the actions of Defendants Budnick, Kaufman, Matlon, and DOES, as alleged herein, Plaintiff was injured as set forth above and is entitled to damages, including compensatory and punitive damages, in an amount to be proven at trial and in excess of the jurisdictional amount required by this Court.

## NINETEENTH CLAIM FOR RELIEF

### INVASION OF PRIVACY (State Tort Claim)

### (Against Defendants Budnick, Bonnett, Conklin, McDonough and DOES)

263.    Plaintiff realleges and incorporates each and every foregoing paragraph.

264.    Defendants Budnick, Bonnett, Conklin, McDonough, and DOES disclosed confidential and private information about Plaintiff without Plaintiff's permission.

265.    Defendants Budnick, Bonnett, Conklin, McDonough, and DOES knew that the information they shared with the investigator would then be shared with others.

266.    In light of the obvious relationship of trust and confidence between Plaintiff and

Defendants Budnick and Bonnett, and the nature of the disclosed information, Plaintiff had a reasonable expectation of privacy and it is highly offensive to a reasonable person that Defendants Budnick, Bonnett, Conklin, McDonough, and DOES shared Plaintiff's personal information.

267.    Defendants Budnick, Bonnett, Conklin, McDonough, and DOES knew, or acted with reckless disregard of the fact, that a reasonable person in Plaintiff's position would consider the disclosure of such information to be highly offensive.

268.    Defendant McDonough intentionally intruded into the private information Plaintiff shared with Defendants Budnick and Bonnett.

269.    As a direct and proximate result of Defendants' actions, as alleged herein, Plaintiff was injured as set forth above and is entitled to damages, including compensatory and punitive damages, in an amount to be proven at trial and in excess of the jurisdictional amount required by this Court.

### TWENTIETH CLAIM FOR RELIEF

**BREACH OF CONFIDENCE (State Tort Claim)**

**(Against Defendants Budnick and Bonnett)**

270.    Plaintiff realleges and incorporates each and every foregoing paragraph.

271.    Defendants Budnick and Bonnett disclosed confidential and private information about Plaintiff without Plaintiff's.

272.    Plaintiff had, and understood that she had, a confidential and privileged therapist-patient relationship with Defendant Budnick and shared the private information with Defendant Budnick during confidential therapy sessions.

273.    Defendant Bonnett provided check-in meetings with Plaintiff following the

incident involving Respondent. These sessions were provided as a supportive measure and were conducted with the understanding that the information shared would be confidential. The nature of the information shared in the sessions, the referral to Defendant Bonnett within the Title IX "supportive measures" framework, and the circumstances under which the sessions occurred created an implied confidential relationship.

274.    Plaintiff trusted Defendants Budnick and Bonnett. There was a promise between Plaintiff and each of Defendants Budnick and Bonnett that Defendants Budnick and Bonnett would not betray Plaintiff's confidence by sharing her personal information without her agreement.

275.    Defendants Budnick and Bonnett breached the trust and confidence that Plaintiff placed in them by sharing her personal information.

276.    Defendants Budnick and Bonnett knew that the information they shared with the investigator would then be shared with others.

277.    In light of the obvious relationship of trust and confidence and the nature of the disclosed information, it is highly offensive to a reasonable person that Defendants Budnick and Bonnett shared Plaintiff's personal information.

278.    As a direct and proximate result of Defendants' actions, as alleged herein, Plaintiff was injured as set forth above and is entitled to damages, including compensatory and punitive damages, in an amount to be proven at trial and in excess of the jurisdictional amount required by this Court.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows against defendants:

1.  For a declaration that Defendants violated Plaintiffs' rights under the U.S.

Constitution and Title IX.

2. For compensatory, general, and special damages, in an amount according to proof;

3. For general damages, including damages for emotional pain, emotional distress, hardship, suffering, shock, worry, anxiety, sleeplessness, illness and trauma and suffering;

4. For prejudgment interest;

5. For exemplary and punitive damages against each individual and Doe defendant, in amounts according to proof and appropriate to punish defendants and deter others from engaging in similar misconduct;

6. For costs of suit, including reasonable attorneys' fees, under 42 U.S.C. § 1988; and

7. For such other relief as may be warranted or as is just and proper.

## X.  DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury in this action.

Dated this 15th day of October, 2025

**LAW OFFICE OF AARON ZISSER**

/s/ Aaron Zisser

Aaron B. Zisser
Attorney for Plaintiff Jane Roe #1, by and
through her Guardian ad Litem, Jane Roe #2