United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| JANE ROE #1,<br><br>Plaintiff,<br><br>v.<br><br>MILL VALLEY SCHOOL DISTRICT, et al.,<br><br>Defendants. | Case No. 25-cv-08823-LB<br><br>**ORDER ADDRESSING MOTIONS TO DISMISS**<br><br>Re: ECF Nos. 36, 43–44, 59 |

**INTRODUCTION**

The plaintiff, a former second-grade student at Old Mill Elementary School, alleges that in August 2024, a male classmate touched her thigh and genitals during class, defendant Mill Valley School District and its employees and contractors mishandled the resulting Title IX investigation, and the District wrongly disclosed confidential information to the accused student's parents.[1] The complaint has the following federal claims: (1) Title IX deliberate indifference to sexual harassment and retaliation, among other Title IX claims; (2) denial of the plaintiff's Fourteenth Amendment equal-protection and due-process rights in violation of 42 U.S.C. § 1983 by all defendants except the District; (3) retaliation in violation of the First Amendment and § 1983 by some individual

---

[1] Am. Compl. (FAC) – ECF No. 33 at 3–4 (¶¶ 5–12), 7–24 (¶¶ 33–115). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 25-cv-08823-LB

defendants; and (4) § 1983 supervisory liability for some individual defendants. It has related state statutory and common-law claims for negligence, respondeat superior, intentional infliction of emotional distress (IIED), sex discrimination, harassment, gender violence, invasion of privacy, and breach of confidence.[2]

There are four motions to dismiss. The District moves to dismiss the federal Title IX claims and all state claims except those sounding in negligence. District employees — Principal Jason Matlon, Title IX coordinator Erin Conklin, Superintendent Elizabeth Kaufman, Assistant Superintendent Paula Rigney, and counselor Nova Bonnett — move to dismiss all claims except the negligence and IIED claims. Two attorneys who investigated or reviewed the Title IX complaint (investigator Sinead McDonough and third-party appeal officer Liz DeChellis) move to dismiss all claims.[3]

The issues are whether the complaint plausibly alleges that (1) the District discriminated against the plaintiff based on sex or retaliated against her, in violation of Title IX, (2) the challenges to the investigation are independent Title IX claims (or instead are factual predicates for a single claim of discrimination), (3) any defendant acted because of the plaintiff's sex or in retaliation for her complaint, (4) the plaintiff held a constitutionally protected interest in the District's investigatory conduct or in the confidentiality of her school therapy records, (5) there is respondeat-superior liability or viable claims for gender violence, invasion of privacy, and breach of confidence, and (6) the outside attorneys acted under color of law. Additional issues are (7) whether the outside attorneys owed any duty to the plaintiff and whether McDonough is protected by the Noerr-Pennington doctrine or the litigation privilege.

The court grants the motions in part and denies them in part.

Claims five, six, seven, and eight are Title IX claims titled, respectively, deliberate indifference, prompt and equitable investigation, erroneous outcome, and denial of supportive measures. The claims are not standalone Title IX claims, instead are theories of liability, and are deemed one claim (claim five) for sex discrimination. Claims five and fourteen for sex discrimination in violation of

---

[2] *Id.* at 25–51 (¶¶ 119–274).

[3] Mots. – ECF Nos. 36, 43–44, 59. Defendant Rachel Budnick, a contract psychologist, answered. FAC – ECF No. 33 at 6 (¶ 25); Answer – ECF No. 53.

Title IX and Cal. Educ. Code § 220 are dismissed for failure to allege deliberate indifference. The plaintiff plausibly pleads Title IX retaliation (claim nine) by alleging protected activity (her complaints), an adverse action (disclosure of her confidential information and Principal Matlon's actions), and causation. The claim for respondeat superior (claim twelve) is dismissed because there is no standalone claim against the District for respondeat superior.

The § 1983 claims against McDonough (claims one through three) and DeChellis (claims one and two) are dismissed: they are not state actors. The state claims are dismissed against them too: they owed no duty to the plaintiff. McDonough's disclosure of the private information is not actionable because no allegations establish disclosure by her outside of the Title IX proceeding.

The § 1983 equal-protection claim (claim one) and the due-process claim (claim two, to the extent that it is predicated on a faulty investigation) are dismissed: no allegations suggest that the plaintiff's sex was a factor in any decision. The due-process claim is plausibly pleaded against Bonnett, Conklin, and Kaufman (but not Matlon and Rigney) for the disclosure of private information to the classmate's parents. The claim for supervisory liability (claim four) survives against Conklin and Kaufman (but not Matlon or Rigney) based on the disclosure, as do the state privacy claims (claims seventeen and eighteen). The claim for First Amendment retaliation (claim three) is dismissed: no allegations suggest retaliatory animus.

The gender-violence claim (claim sixteen) is dismissed: there is no vicarious liability for Budnick's role play during the therapy session. Cal. Civ. Code § 52.4(e).

## STATEMENT

### 1. The Incident and Initial Response

The plaintiff was a second-grade student at Old Mill Valley Elementary School. On August 30, 2024, a male classmate allegedly touched her genitals and thighs and then touched her a second time. School staff observed the same boy pinch the buttocks of another student that same school year and were aware that he had challenges with impulse control.[4]

---

[4] FAC – ECF No. 33 at 3 (¶¶ 4–5), 7 (¶¶ 33–36).

ORDER – No. 25-cv-08823-LB                    3

The plaintiff reported the conduct to her teacher. Principal Jason Matlon interviewed the plaintiff and the boy that day, without notifying the plaintiff's parents. He did not take notes and did not have a "support person" present.[5] He sent the plaintiff back to the classroom, did not separate her from the boy, and failed to implement safety measures to prevent further touching.[6] He interviewed the plaintiff a second time, "despite the need to refer the report to the Title IX office and immediately ensure supportive measures" and despite the plaintiff's parents' telling him after the first interview that they did not want him to interview the plaintiff alone.[7] He directed the boy to apologize. He was dismissive with the plaintiff's mother, explained that the apology could be written or in person, and said that he would not change classrooms or send the boy home.[8] After the plaintiff's mother contacted Superintendent Kaufman, the other student was moved to a different classroom.[9]

### 2. The Title IX Complaint and Therapy

On September 3, 2024, the plaintiff's parents filed a Title IX complaint with the District regarding the incident and the principal's mishandling of it.[10] The school district hired defendant Sinead McDonough, a second-year attorney working at a private firm, to conduct a neutral investigation as a Title IX investigator.[11]

The district contracted with an outside, unlicensed psychologist, defendant Rachel Budnick, to provide counseling and therapy to students.[12] After the plaintiff reported the incident, the District referred her to Budnick as a Title IX supportive measure to provide confidential, privileged

---

[5] *Id.* at 8 (¶¶ 39–41(a), (c)).

[6] *Id.* at 9 (¶ 41(e), (f)).

[7] *Id.* at 8–9 (¶ 41(b)).

[8] *Id.* at 9 (¶ 41(e), (h)).

[9] *Id.* at 10 (¶ 43).

[10] *Id.* (¶¶ 44–45).

[11] *Id.* at 10–11 (¶¶ 46–47, 49).

[12] *Id.* at 6 (¶ 25).

therapy.[13] During a therapy session, she asked the plaintiff to show, "on Defendant Budnick's body, where and how Plaintiff was touched, thus inviting Plaintiff to touch Defendant Budnick on her genitals." The plaintiff touched Budnick on her thigh, reacting "to this contact with fear and embarrassment."[14] Budnick accused the plaintiff of lying about the incident.[15] She did not discuss her approach with the parents in advance. The parents learned of it because McDonough's initial report, issued on November 1, 2024, had confidential information provided by Budnick in an investigative interview with McDonough on September 26, 2024, without any waiver from the plaintiff's parents.[16] The District continues to retain Budnick for therapy sessions with students and "refused to connect" the plaintiff with another therapist, despite its "obligation to provide supportive measures" and the plaintiff's "obvious discomfort with continuing to see" Budnick.[17]

District counselor (and defendant) Nova Bonnett conducted multiple sessions with the plaintiff about the incident, her feelings following the incident, specific coping tools she used, her relationship with her mother, and a separate incident when the accused classmate taunted her.[18] She disclosed this confidential, privileged information in an investigative interview with McDonough on September 13, 2024, without any waiver from the plaintiffs' parents. The information was used to falsely portray the plaintiff as changing her account or lying.[19]

### 3. The Investigation

McDonough issued a Title IX report on November 1, 2024. It contained information about the confidential therapy and school counseling sessions. The report was disclosed to the classmate's

---

[13] *Id.* at 19 (¶ 80).

[14] *Id.* at 20 (¶¶ 89–91).

[15] *Id.* at 21 (¶ 93) (accused the plaintiff of lying), 23 (¶ 110) (information from Budnick was used to "falsely portray Plaintiff as changing her account, performing, or even lying").

[16] *Id.* at 21–23 (¶¶ 94, 100).

[17] *Id.* at 21 (¶¶ 95–96).

[18] *Id.* at 6 (¶ 26), 23 (¶ 111).

[19] *Id.* at 22 (¶ 101), 23–24 (¶¶ 111–12).

United States District Court
Northern District of California

United States District Court
Northern District of California

parents, who had it until at least June 2025.[20] A new draft report issued on December 6, 2024, without the confidential information.[21] The parents advised the District that the investigation was flawed, in part because McDonough lacked experience, did not take notes, asked the plaintiff to demonstrate what happened, asked questions that a child would not understand, did not assess the classmate's credibility and assessed only the plaintiff's, did not consider the classmate's apology as an admission, overstated minor inconsistencies, and conflated statements made by the plaintiff and her mother.[22] The District denied the parents' request for a new investigator.[23]

Title IX coordinator (and defendant) Conklin investigated the plaintiff's complaint about how Principal Matlon conducted his investigation, concluded that the accusations against him could not be substantiated, and dismissed the complaint. On March 19, 2025, the parents appealed.[24] The District hired an outside attorney, defendant Liz DeChellis, to officiate the appeal.[25] She upheld the dismissal. Assistant Superintendent (and defendant) Rigney issued a letter on April 24, 2025, describing the decision.[26] The parents complained about the decision's problems: focusing on harassment (instead of discrimination), falsely equating the Title IX process with the other complaint process, considering the investigative report inappropriately, and concluding that there was no bias, thereby ignoring other issues that the plaintiff identified in her appeal.[27] Conklin then issued a new notice of investigation on June 9, 2025, and the parents were interviewed on July 8, 2025. As of February 20, 2026, the filing date of the FAC, the parents did not know the outcome of the investigation.[28]

---

[20] *Id.* at 11 (¶ 54), 12 (¶ 57) (the classmate's parents had the material until at least June 12, 2025, when the parents reached an informal resolution for its destruction).

[21] *Id.* at 12 (¶ 58).

[22] *Id.* at 12–13 (¶¶ 58–59).

[23] *Id.* at 15 (¶ 63).

[24] *Id.* at 5 (¶ 22), 15–16 (¶¶ 64–67).

[25] *Id.* at 6 (¶ 27).

[26] *Id.* at 6 (¶ 28), 17 (¶ 69).

[27] *Id.* at 17–18 (¶ 71).

[28] *Id.* at 18 (¶¶ 74, 78–79).

### 4.  The Operative Complaint and Motions to Dismiss

The plaintiff sued the District and eight individual defendants. Five are District employees: Principal Jason Matlon, Title IX coordinator Erin Conklin, Superintendent Elizabeth Kaufman, Assistant Superintendent Paula Rigney, and counselor Nova Bonnett. Three are contractors: attorneys Sinead McDonough and Liz DeChellis, who handled the investigations, and Rachel Budnick, an unlicensed psychologist.

The federal claims are (1) Title IX violations (claims five through nine against the District) on five theories of liability (claim five for deliberate indifference to sexual misconduct, claim six for a lack of a proper investigation, claim seven for an erroneous outcome, claim eight for hostile environment and denial of supportive measures, and claim nine for retaliation), (2) 42 U.S.C. § 1983 violations of equal-protection and due-process violations under the Fourteenth Amendment (claims one and two against all defendants except the District), (3) retaliation in violation of the First Amendment and § 1983 (claim three against Matlon, Conklin, McDonough, and Budnick), and (4) supervisory liability under § 1983 for violation of the First and Fourteenth Amendments (claim four against Kaufman, Conklin, Matlon, and Rigney).

The state claims are (5) negligent supervision, training, and staffing in violation of Cal. Civ. Code § 1714 and Cal. Gov't Code § 844.6(d) (claim ten against the District, Kaufman, Matlon, and Conklin), (6) negligence and negligent infliction of emotional distress (claim eleven against all defendants except Rigney), (7) respondeat superior (claim twelve against the District), (8) intentional infliction of emotional distress (IIED) (claim thirteen against Conklin, Matlon, McDonough, Bonnett, and Budnick), (9) sex discrimination in violation of Cal. Educ. Code § 220 (claim fourteen against the District); (10) harassment in violation of California's Bane Act, Cal. Civ. Code § 52.1 (claim fifteen against Budnick), (11) gender violence in violation of Cal. Civ. Code § 52.4 (claim sixteen against Conklin, Budnick, Kaufman, and Matlon), (12) invasion of the plaintiff's privacy in violation of California common law and Cal. Const. art. I, § 1 (claim

seventeen against Budnick, Bonnett, Conklin, and McDonough), and (13) breach of confidence (claim eighteen against Budnick and Bonnett).[29]

The District, its employees, and the outside attorneys moved to dismiss.[30] The court has federal-question jurisdiction under 28 U.S.C. § 1331. All parties consented to magistrate-judge jurisdiction.[31] *Id.* § 636(c). The court held a hearing on June 11, 2026.

## ANALYSIS

A complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must plead enough facts to state a claim that is plausible on its face. *Twombly*, 550 U.S. at 570. Threadbare recitals of the elements of a claim, supported by mere conclusory statements, do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court accepts factual allegations as true and construes them favorably to plaintiffs. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018). A complaint also must plead a cognizable legal theory. *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016).

## 1. The District — Claims Five Through Nine, Twelve, and Fourteen

The claims are sex discrimination in violation of Title IX and Cal. Educ. Code § 220 (claims five through eight and fourteen), Title IX retaliation (claim nine), and respondeat superior (claim twelve). The discrimination claims are dismissed: the plaintiff does not plausibly plead deliberate indifference. The plaintiff plausibly pleaded a retaliation claim: her complaints, an adverse action (disclosure of confidential information and Principal Matlon's actions), and causation. Claim twelve is dismissed: there is no standalone claim for respondeat superior

---

[29] *Id.* at 25–51 (¶¶ 119–274).

[30] Mots. – ECF Nos. 36, 43–44, 59. Budnick answered. Answer – ECF No. 53.

[31] Consents – ECF Nos. 8, 21, 26, 32, 47, 51.

ORDER – No. 25-cv-08823-LB                 8

**1.1 Sex Discrimination – Claims Five Through Eight and Fourteen**

Title IX prohibits education programs from discriminating based on sex: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a). The California Education Code prohibits discrimination based on gender. Cal. Educ. Code § 220. Education Code and Title IX claims have the same elements. *Videckis v. Pepperdine Univ.*, 100 F. Supp. 3d 927, 935 (C.D. Cal. 2015).

A school is liable for harassment by a third party when (1) it exercises substantial control over the offender and (2) the harassment takes place "in a context subject to the school district's control." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 644–45 (1999). Sexual harassment by a classmate can support a Title IX claim. *C. T. v. Oakley Union Elementary Sch. Dist.*, No. 24-cv-09507-DMR, 2025 WL 2969294, at *4 (N.D. Cal. Oct. 21, 2025) (collecting cases). "A school that receives federal funding can be liable for an individual claim of student-on-student harassment [] only if (1) the school had substantial control over the harasser and the context of the harassment; (2) the plaintiff suffered harassment so severe that it deprived the plaintiff of access to educational opportunities or benefits; (3) a school official who had authority to address the issue and institute corrective measures for the school had actual knowledge of the harassment; and (4) the school acted with 'deliberate indifference' to the harassment such that the indifference subject[ed the plaintiff] to harassment." *Grabowski v. Ariz. Bd. of Regents*, 69 F.4th 1110, 1118–19 (9th Cir. 2023) (cleaned up) (citing *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1105 (9th Cir. 2020) (quoting *Davis*, 526 U.S. at 644)).

Preliminarily, claims five through eight assert sex discrimination but are labeled, respectively, deliberate indifference, prompt and equitable investigation, erroneous outcome, and denial of supportive measures. Evidence of an untimely or inequitable investigation may establish deliberate indifference. *Gangitano v. Cabrillo Coll.*, No. 17-CV-02870-LHK, 2017 WL 4168594, at *3 & n.1 (N. D. Cal. Sep. 20, 2017); *Doe v. Lincoln Pub. Schs.*, No. 4:20-CV-3102, 2021 WL 2320479, at *4 (D. Neb. June 7, 2021) (failure to provide supportive services "may constitute evidence of

United States District Court
Northern District of California

the defendant's deliberate indifference to student-on-student sexual harassment").[32] But labels like these are not separate legal claims for sex discrimination. *Doe v. Manhattan Beach Unified Sch. Dist.*, No. 23-55233, 2024 WL 719049, at *2 (9th Cir. Feb. 22, 2024) ("[O]ur court does not recognize an 'erroneous outcome' theory for Title IX liability."). Claims six through eight are dismissed as standalone claims. This dismissal is without prejudice to the plaintiff's reliance on allegations in them to establish a single claim for sex discrimination (claim five). She also may replead a single sex-discrimination claim with all relevant allegations.

*        *        *

The remaining issues are the District's contentions that the plaintiff did not plausibly plead deliberate indifference or that the classmate acted on account of Jane Roe's sex.[33]

### 1.1.1 Deliberate Indifference

A school is deliberately indifferent when its "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 739 (9th Cir. 2000) (quoting *Davis*, 526 U.S. at 648); *accord Grabowski*, 69 F.4th at 1120. Deliberate indifference "must, at a minimum, cause students to undergo harassment, or make them liable or vulnerable to it." *Grabowski*, 69 F.4th at 1120 (quoting *Davis*, 526 U.S. at 645). The standard is high: "a negligent, lazy, or careless response" is not deliberate indifference. *Id.* (cleaned up). "[T]he plaintiff must demonstrate that the school's actions amounted to an official decision not to remedy the discrimination." *Id.* (cleaned up). Allegations that a defendant took no meaningful action can be enough. *Id.*; *S.M. v. Sequoia Union High Sch. Dist.*, No. 25-cv-09255-TSH, 2026 WL 145850, at *10 (N.D. Cal. Jan. 20, 2026) (quoting *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009)).

On a motion to dismiss, courts can "identify a response as not 'clearly unreasonable' as a matter of law." *Sequoia*, 2026 WL 145850, at *10 (quoting *Davis*, 526 U.S. at 649). But deliberate

---

[32] Mot. – ECF No. 43 at 15 (citing *Gangitano*, 2017 WL 4168594, at *3 & n.1 with parenthetical that an "alleged failure to provide prompt and equitable investigation [was] reviewed as part of 'deliberate indifference' element").

[33] *Id.* at 16, 19.

indifference often is "will often be a fact-laden question, for which bright lines are ill-suited." *Id.* (cleaned up).

The district contends that its response was not clearly unreasonable. It cites its interviews, engagement with the plaintiff's parents, eventual decision to move the classmate to a different classroom, provision of therapy services, and hiring of outside investigators.[34] It acknowledges the plaintiff's allegations that it lacked adequate policies to address claims like these and failed to follow federal law and its policies. But it asserts that the lack of adequate policies, the failure to follow federal law, and the failure to follow policies are not deliberate indifference.[35] It identifies the plaintiff's failure to allege any facts that McDonough evidenced gender bias.[36] It argues that no facts establish that the disclosure of privileged information was intentional or deliberately indifferent. It concludes that its actions were not deliberately indifferent.[37]

The plaintiff responds that she is challenging how the district responded to the classmate's sexual harassment: the psychologist abused her, and Principal Matlon did not respect the Title IX process, interviewed the plaintiff a second time (despite the parents' request), made a call for an apology only, and rendered a decision too quickly, forcing the District to hire contractors. The District's staff and contractors engaged in problematic practices.[38]

The District replies that these are not significant flaws. Principal Matlon interviewed the children, met with the plaintiff's mother the same day, interviewed the plaintiff a second time, and required the classmate to apologize. Superintendent Kaufman moved the classmate. The District provided therapeutic services and hired contractors to investigate the allegations of sexual misconduct and the sufficiency of Principal Matlon's investigation.[39]

---

[34] *Id.* at 16–17.

[35] *Id.* at 17–19.

[36] *Id.* at 17 (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291–92 (1998) (failure to follow federal law) and *Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1090 (9th Cir. 2006) (failure to follow school policy)).

[37] *Id.* at 18–19.

[38] Opp'n – ECF No. 54 at 18–21.

[39] Reply – ECF No. 57 at 8–9.

ORDER – No. 25-cv-08823-LB                    11

Deliberate indifference is not pleaded plausibly. The District interviewed the plaintiff, the classmate, the parents, and provided therapeutic services. It hired two outside investigators to conduct two investigations, reopening them to address the parents' concerns. This is not action that amounts to "an official decision not to remedy the discrimination." *Grabowski*, 69 F.4th at 1120 (cleaned up) (quoting *Karasek*, 956 F.3d at 1105). Instead, it is meaningful action. Courts hold that deliberate indifference is pleaded sufficiently only when there was no meaningful action. *Sequoia*, 2026 WL 145850, at *10–11 (denying motion to dismiss when the person with authority refused to initiate an investigation) (collecting cases); *Grabowski*, 69 F.4th at 1120–1121 (deliberate indifference pleaded by allegations that, other than meeting with the plaintiff on two occasions, the defendant coaches ignored the plaintiff's complaints of almost-daily bullying based on perceived sexual orientation and lied about their knowledge); *Myles v. W. Contra Costa Unified Sch. Dist.*, No. 23-cv-01369-AGT, 2024 WL 1354440, at *7 (N.D. Cal. Mar. 28, 2024) (denied motion to dismiss when district was aware of pervasive sexual harassment of female students, including by the perpetrator, and did not discipline him or address the threat other than to meet with the plaintiff's parents, report the abuse to the police, and permit the plaintiff to change her class schedule).

The complaint describes the investigations and the District's provision of the therapeutic services, and it identifies what went wrong, principally the demonstration of the touching with Budnick, Principal Matlon's actions, and an alleged second-rate investigation by someone inexperienced.[40] This is a challenge to the sufficiency of the process and the outcome. A "negligent, lazy, or careless response" is not deliberate indifference. *Grabowski*, 69 F.4th at 1120 (cleaned up). No allegations support an inference that "the school's actions amounted to an official decision not to remedy the discrimination" or that it took no meaningful action. *Id.* (cleaned up). The district's alleged lack of adequate policies, the failure to follow federal law, and the failure to follow policies is not deliberate indifference either. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291–92 (1998) (failure to follow federal law); *Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1089–90 (9th Cir. 2006) (failure to follow school policy, resulting in a nine-month delay before a hearing, and the

---

[40] FAC – ECF No. 33 at 8–10 (¶¶ 40–43), 19–20 (¶¶ 80–87).

ORDER – No. 25-cv-08823-LB                    12

college's failure to fire the professor who sexually harassed the plaintiff, did not preclude summary judgment; the record did not permit an inference that the delay was a deliberate attempt to sabotage the plaintiff' complaint or its orderly resolution). The plaintiff cites no authority supporting her contention that she plausibly pleaded deliberate indifference. The weight of authority supports the conclusion that she did not.

The discrimination claims are dismissed for failure to plausibly plead deliberate indifference.

### 1.1.2 Sex Discrimination

Title IX prohibits discrimination based on sex. 20 U.S.C. § 1681(a). The District contends that the plaintiff did not plausibly plead that the classmate touched her because of her sex, "as opposed to said classmate engaging in such conduct with any convenient classmate of any sex."[41] The analysis turns on the meaning of discrimination "on the basis of sex."

Title IX's "on the basis of sex" has the same meaning as Title VII's "because of sex." *Doe v. Snyder*, 28 F.4th 103, 114 (9th Cir. 2022) (the Ninth Circuit "construe[s] Title IX's protections consistently with those of Title VII"). The Supreme Court construes Title VII's "because of" as "by reason of" or "on account of." *Bostock v. Clayton County*, 590 U.S. 644, 656 (2020). The "because of" test "incorporates the simple and traditional standard of but-for causation." *Id.* (cleaned up). To "discriminate" against a person "would seem to mean treating that individual worse than others who are similarly situated." *Id.* at 657. In the Title VII employment context, "[t]he critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). "Courts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations, because the challenged conduct typically involves explicit or implicit proposals of sexual activity . . . ." *Id.* A plaintiff "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimination because of sex." *Id.* at 81 (cleaned up). In all harassment cases, the objective severity of the harassment is judged from the perspective of a reasonable person in the plaintiff's position,

---

[41] Mot. – ECF No. 43 at 19.

considering all the circumstances. That inquiry "requires careful consideration of the social context in which particular behavior occurs and is experienced by its target." *Id.*

Here, the complaint alleged the touching of the plaintiff's genitals, her thigh, a second touching, and the classmate's other conduct (including his impulse control). The District distinguishes between harassment and harassment on the basis of sex, citing a case where a coach's verbal abuse did not constitute harassment "because of sex."[42] *Thomas v. Regents of Univ. of Cal.*, No. 19-cv-06463-SI, 2020 WL 3892860, at *8–9 (N.D. Cal. July 10, 2020) (collecting cases). *Thomas* is distinguishable: it involved whether the plaintiff plausibly alleged a hostile environment by sex-specific language aimed to humiliate, ridicule, or intimidate. *Id.* (quoting *Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir. 2007)). The language at issue was bullying and harassing but not actionable Title IX conduct because it was not sex-specific. *Id.* Whether touching genitals (generally sexual in nature) is sexual harassment or merely harassment is fact inquiry, given the classmate's other behavior.

*        *        *

The Title IX claims for sex discrimination (claims five through eight) are dismissed. The Cal. Educ. Code § 220 claim (claim fourteen) has the same elements and is dismissed too. *Videckis*, 100 F. Supp. 3d at 935.

### 1.2 Retaliation — Claim Nine

The elements of a Title IX retaliation claim are (1) the claimant engaged in protected activity, (2) the claimant suffered an adverse action by the defendant, and (3) there is a causal connection between the two. *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 867 (9th Cir. 2014). "Protected activity" is "protest[ing] or otherwise oppos[ing] unlawful . . . discrimination," including "speaking out against sex discrimination." *Emeldi v. Univ. of Or.*, 698 F.3d 715, 725 (9th Cir. 2012) (cleaned up) (complaints about gender-based institutional bias and unequal treatment of female students were Title IX protected activity); *accord Grabowski*, 69 F.4th at 1121–22 (complaints of sexual and homophobic bullying).

---

[42] Reply – ECF No. 57 at 9–10 (citing *Thomas*, 2020 WL 3892860, at *8–9).

The plaintiff alleges that her parents complained about the incident and objected to the handling of the complaints, and the District retaliated by disclosing her confidential information and by Principal Matlon's failure to take appropriate action.[43] This sufficiently pleads protected activity, an adverse action, and a causal connection. *Ollier*, 768 F.3d at 867; *Emeldi*, 698 F.3d at 724 (a plaintiff who lacks direct evidence of retaliation makes out a prima facie case of retaliation by alleging these elements). Claim nine survives.

### 1.3 Respondeat Superior — Claim Twelve

There is no standalone claim for respondeat superior. *Chan v. Chancelor*, No. 09cv1839 AJB (CAB), 2011 WL 5914263, at *2 (S.D. Cal. Nov. 28, 2011) (collecting federal and California cases); *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 296 (1995). There is no vicarious liability under § 1983. *Espinoza v. Ahmed*, No. 13-cv-05047-JST (PR), 2014 WL 1940566, at *2 (N.D. Cal. May 14, 2014). Claim twelve is dismissed. This does not preclude the plaintiff from asserting vicarious liability for the state claims.

### 2.   42 U.S.C. § 1983 — Equal Protection and Due Process — All Individual Defendants

The Fourteenth Amendment provides that a State shall not "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. The plaintiff asserts violations of her equal-protection and due-process rights.

Preliminarily, § 1983 claims may be asserted only against state actors. *Fitzgerald*, 555 U.S. at 257. McDonough and DeChellis are outside counsel contracted to conduct Title IX investigations. Private attorneys, acting in their professional capacity while representing their client, even if their clients are school districts, are not acting as state actors. *Prather v. Rodeo-Hercules Fire Prevention Dist.*, No. C 10-02120 JSW, 2010 WL 11887944, at *2 (N.D. Cal. Aug. 26, 2010) (collecting cases). The § 1983 claims against McDonough and DeChellis are dismissed.

---

[43] *See supra* Statement; FAC – ECF No. 33 at 39 (¶¶ 200–05).

ORDER – No. 25-cv-08823-LB                15

United States District Court
Northern District of California

### 2.1    Equal Protection — Claim One

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Equal-protection claims are "available to plaintiffs alleging unconstitutional gender discrimination in schools." *Fitzgerald*, 555 U.S. at 258; *Craig v. Boren*, 429 U.S. 190, 197 (1976) (sex is a protected class). A plaintiff alleging a denial of equal protection based on a suspect classification "must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent." *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998).

Here, the FAC alleges only procedural irregularities during the investigation and does not connect those irregularities with the plaintiff's sex. Superintendent Kaufman is alleged to have acted inadequately, including by the supportive services that the plaintiff received. Principal Matlon and Title IX coordinator Conklin allegedly conducted a deficient review of the plaintiff's complaint. Counselor Bonnett disclosed confidential therapy communications. Assistant Superintendent Rigney reviewed and approved DeChellis's decision dismissing the complaint against Matlon. No allegations suggest that the plaintiff's sex affected how Kaufman responded to the plaintiff's complaint, Bonnett made the disclosure, or Matlon, Conklin, and Rigney conducted their reviews.

### 2.2 Due Process — Claim Two

The Due Process Clause of the Fourteenth Amendment protects individuals against governmental deprivations of "life, liberty, or property" without due process of law. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 570–71 (1972); *Mullins v. Oregon*, 57 F.3d 789, 795 (9th Cir. 1995). To state a substantive due-process claim, a plaintiff must establish "a government deprivation of life, liberty, or property" that "shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998) (cleaned up). A procedural due-process claim has three elements: "1) a protectible liberty or property interest, 2) government deprivation of that interest, and 3) a denial of adequate procedural protections." *Holman v. City of Warrenton*, 242 F. Supp. 2d 791, 803 (D. Or. 2002) (citing *Foss v.*

United States District Court
Northern District of California

*Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 588 (9th Cir. 1998)); *see also Colombo v. Palo Alto Unified Sch. Dist.*, No. 24-cv-00909-NC, 2024 WL 6840045, at *2 (N.D. Cal. Dec. 13, 2024).

The plaintiff asserts that the investigation was conducted in a discriminatory manner, she has a protected interest in freedom from harassment, and the District employees failed to protect her from abuse.[44] There is no constitutional right to an accurate or favorable accident report or internal investigation. *Powers v. Layton*, No. 21-cv-06382-AGT, 2022 WL 3579887, at *2 (N.D. Cal. Aug. 19, 2022); *Troglia v. Cerritos Cmty. Coll. Dist.*, No. 2:25-cv-03161-DOC-KES, 2025 WL 2713160, at *18 (C.D. Cal. Aug. 25, 2025) (no "liberty or property interest in a competent Title IX investigation"), *R. & R. adopted*, 2025 WL 2710204 (C.D. Cal. Sep. 19, 2025). A protected characteristic must play a factor in how the state actor conducted the review in question. *Davis v. Folsom Cordova Unified Sch. Dist.*, No. CIV S-11-1242 KJM DAD PS, 2013 U.S. Dist. LEXIS 9225, at *29–30 (E.D. Cal. Jan. 22, 2013) (collecting cases). No allegations connect the alleged irregularities here with the plaintiff's sex.[45] *Colombo*, 2024 WL 6840045, at *6–7. No allegations suggest that District employees failed to protect the plaintiff from abuse before the incident or after. *Cf. Plumeau v. Sch. Dist. No. 40 Yamhill Cnty.*, 130 F.3d 432, 438 (9th Cir. 1997) ("constitutional right to be free from state-imposed violations of bodily integrity" including "sexual abuse by school employees"). Any abuse arising from the therapy with Budnick is a claim against her, not the District employees, because no allegations tie them to Budnick's conduct. *Cf. McLaran v. Rakevich*, 3:20-cv-05395-JRC, 2021 WL 825378, at *7 (W.D. Wa. Mar. 4, 2021) (similar allegations not a basis for a substantive due-process claim).

The plaintiff also asserts a protected interest in her private therapy information.[46] She has pleaded a plausible constitutional privacy claim against Bonnett, Conklin, and Kaufman (but not Matlon and Rigney because the complaint does not allege their participation in the disclosure of confidential therapy or counseling information).

---

[44] Opp'n – ECF No. 54 at 12.

[45] *See* previous sections (summarizing allegations and concluding that no allegations establish the school's failure to act because of her sex).

[46] Opp'n – ECF No. 54 at 12–15.

United States District Court
Northern District of California

The defendants do not dispute that the plaintiff has a right of privacy in her therapy records generally. *See Seaton v. Mayberg*, 610 F.3d 530, 535–38 (9th Cir. 2010) (collecting cases on right to medical privacy); *Parents for Priv. v. Barr*, 949 F.3d 1210, 1222 (9th Cir. 2020). Instead, they contend that there is no subjective right to privacy here because federal law — the Family Education Rights and Privacy Act (FERPA) — allows the disclosure without the parents' written consent because they have a legitimate educational interest in the information. Also, they assert waiver because the plaintiff put the issue in dispute.[47] 20 U.S.C. § 1232g(b)(1)(A); 34 C.F.R. § 99.31(a)(1)(i)(A). But the information was disclosed not just to the District but also to the classmate's parents. A new report was generated without the information, and the private information was destroyed. Moreover, filing a Title IX complaint based on an allegedly abusive touching is different than formal lawsuits where plaintiffs put their mental state at issue. *Cf. Upshaw v. Chau*, No. 22-cv-00183-JO-BGS, 2022 WL 13801079, at *1 (S.D. Cal. Oct. 21, 2022) (the plaintiff put his medical care at issue by bringing a lawsuit). Even then, not all medical records are disclosable. *Hinterdobler v. FANUC Am. Corp.*, No. 25-cv-08001-EMC, 2026 WL 673835, at *1 (N.D. Cal. Mar. 10, 2026). The defendants' other cases do not change this conclusion. They too involve disclosure in litigation. *Bigge v. Dist. Sch. Bd. of Citrus Cnty.*, No. 5:11-cv-210-Oc-10TBS, 2011 WL 6002927, at *1–3 (M.D. Fla. Nov. 28, 2011) (names and contact information of student witnesses); *Moeck v. Pleasant Valley Sch. Dist.*, No. 3:13-CV-1305, 2014 WL 4988274, at *3 (M.D. Pa. Oct. 7, 2014) (education records with "significant protections that severely limit the scope of persons" with access to the information).

The issue is more suitable for summary judgment.

**3. First Amendment Retaliation — Claim Three — Matlon and Conklin**

The issue is whether disclosure of the plaintiff's confidential therapy information was retaliation for her complaints.

Retaliation by a state actor for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983, even if the act, when taken for different reasons, would have been proper. *Mt. Healthy City*

---

[47] Mot. – ECF No. 44 at 22–24.

United States District Court
Northern District of California

*Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283–84 (1977). Retaliation, though it is not expressly referred to in the Constitution, is actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). Thus, a claim may be stated under § 1983 where a plaintiff alleges retaliation by state actors for the exercise of his First Amendment rights. *Mt. Healthy*, 429 U.S. at 283–84. The plaintiff must show that the type of activity she was engaged in was protected by the First Amendment and that the protected conduct was a substantial or motivating factor for the alleged retaliatory acts. *Id.* at 287. Filing complaints and speaking out about government officials are protected conduct under the First Amendment. *Sampson v. County of Los Angeles*, 974 F.3d 1012, 1019–20 (9th Cir. 2020).

To state a claim for First Amendment retaliation against a government official, a plaintiff must allege that (1) she engaged in constitutionally protected activity, (2) as a result, she was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action. *Mulligan v. Nichols*, 835 F.3d 983, 988 (9th Cir. 2016).

The defendants contend that no allegations suggest retaliatory animus.[48] The plaintiff points to Principal Matlon's "dismissive and hostile attitude."[49] No allegations link his attitude to the disclosures by Conklin or Bonnett or suggest that the disclosure was retaliatory.

Claim three is dismissed.[50]

### 4. Supervisory Liability — Claim Four — Kaufman, Conklin, Matlon, and Rigney

The claim for supervisory liability is predicated on the disclosure of the therapy information.[51]

---

[48] *Id.* at 24–25.

[49] Opp'n – ECF No. 54 at 15.

[50] The dismissal of claim three is also as to McDonough. *See supra* Section 2 (dismissing all § 1983 claims against McDonough and DeChellis).

[51] Because the equal-protection and retaliation claims are dismissed, only the due-process privacy claim remains.

"A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (cleaned up); *see Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000) (supervisors can be liable for "1) their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of others"). Supervisory liability may exist "even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (cleaned up).

The defendants contend that no allegations establish their personal involvement in the alleged constitutional violation or that a policy caused the violation.[52] The plaintiff points to the review of the appeals decision and allowing it to issue despite the disclosure of confidential information in the draft report (Conklin), and failing to supervise subordinates or those providing services on campus (Conklin, Kaufman, and Matlon).[53]

The claim survives against Conklin and Kaufman. Conklin oversaw the Title IX process. Kaufman supervised Conklin and others and allowed the release of information. No allegations establish Matlon's or Rigney's involvement. The claim against them is dismissed.

## 5. Gender Violence — Claim Sixteen — Conklin, Kaufman, and Matlon

California Civil Code § 52.4 allows a civil action by a person "who has been subjected to gender violence" against any "responsible party." Cal. Civ. Code § 52.4. Except as "provided by statute, a public employee is not liable for an injury caused by the act or omission of another person." Cal. Gov't Code § 820.8; *see* Cal. Civ. Code § 52.4(e) (no vicarious liability); *Doe v.*

---

[52] Mot. – ECF No. 44 at 25–26.

[53] Opp'n – ECF No. 54 at 16–17.

United States District Court
Northern District of California

*Pasadena Hosp. Ass'n*, No. 2:18-cv-08710-ODW (MAAx), 2020 WL 1244357, at *8 (C.D. Cal. Mar. 16, 2020) (no vicarious liability under § 52.4(e)). A plaintiff must plead the use or threatened use of physical force "at least in part based on the gender of the victim" or a "physical intrusion or physical invasion of a sexual nature under coercive conditions." *Bolton v. City of Berkeley*, No. 19-cv-05212-WHO, 2019 WL 6250927, at *7 (N.D. Cal. Nov. 22, 2019) (quoting Cal. Civ. Code § 52.4(c)).

The conduct at issue is Budnick's role play during the therapy session. No allegations suggest the District employee's personal participation or aiding and abetting the conduct. The claim is dismissed against them because they are not vicariously liable. Cal. Civ. Code § 52.4(e).

### 6. Invasion of Privacy and Breach of Confidence — Claims Seventeen and Eighteen

Claim seventeen is for breach of privacy (against Bonnett, Conklin, and McDonough) and claim eighteen is for breach of confidence (against Bonnett).

Claims for invasion of privacy under California law involve four types of conduct: "(1) intrusion into private matters; (2) public disclosure of private facts; (3) publicity placing a person in a false light; and (4) misappropriation of a person's name or likeness." *Bernstein v. Apollo Grp., Inc.*, No. 5:13-CV-01701-LHK, 2014 WL 854834, at *5 (N.D. Cal. Feb. 28, 2014) (quoting *Hill v. NCAA*, 7 Cal. 4th 1, 24 (1994)). The elements are (1) a legally protected privacy interest, (2) a reasonable expectation of privacy in the circumstances, and (3) conduct constituting a serious invasion of privacy. "Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Id.* (quoting *Ruiz v. Gap, Inc.*, 380 Fed. App'x 689, 692 (9th Cir. 2010), citing *Hill*, 7 Cal. 4th at 37).

For a breach-of-confidence claim, a "plaintiff must demonstrate that: (1) the plaintiff conveyed confidential and novel information to the defendant; (2) the defendant had knowledge that the information was being disclosed in confidence; (3) there was an understanding between the defendant and the plaintiff that the confidence be maintained; and (4) there was a disclosure or use

in violation of the understanding." *Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1227 (9th Cir. 1997) (cleaned up).

Claim seventeen for breach of privacy survives for the reasons stated above.

Bonnett asserts that claim eighteen fails because she did not misappropriate the confidential information for her personal benefit. To support the argument, she cites a case requiring actual use of confidential information for personal benefit.[54] *Hollywood Screentest of Am. Inc. v. NBC Universal, Inc.*, 151 Cal. App. 4th 631, 651 (2007). That argument fails: *Hollywood* is about misappropriation of an idea for a reality TV show. This is not a trade-secret case. California also recognizes a breach-of-confidence claim based on unauthorized disclosure to a third party. The applicable jury instruction recognizes this. Judicial Council of California Civil Jury Instructions CACI No. 4103 (2026 ed.). In her reply, Bonnett argued only that there is no recognized privacy interest.[55] The court has rejected this argument.

## 7.  Remaining Claims Against McDonough and DeChellis

The remaining claims are negligence and negligent infliction of emotional distress (claim eleven against McDonough and DeChellis) and IIED (claim thirteen against McDonough).

For the negligence claims, the plaintiff did not plausibly plead that either defendant had a duty of care to a student. Both were retained as outside counsel. No fact allegations suggest a special relationship like that between a student and a school district and its employees. *C.A. v. William S. Hart Union High Sch. Dist.*, 53 Cal. 4th 861, 869 (2012). A similar result applies to the IIED claim: it is based on the report and the unauthorized disclosure to the classmate's parents. That does not form the basis for a claim against a third-party attorney retained to investigate a complaint.

---

[54] Mot. – ECF No. 44 at 29.

[55] Reply – ECF No. 56 at 16–17.

ORDER – No. 25-cv-08823-LB                    22

McDonough raises two defenses to all claims: she is immune under the *Noerr-Pennington* doctrine, and the state claims against her are barred by California's litigation privilege, Cal. Civ. Code § 47(b).[56]

"The *Noerr–Pennington* doctrine derives from the First Amendment's guarantee of 'the right of the people . . . to petition the Government for a redress of grievances.'" *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006) (quoting U.S. Const. amend. I). Under the doctrine, those who petition the government for redress "are generally immune from statutory liability for their petitioning conduct." *Id.* The doctrine protects not only petitioning activity but activity incidental to and in anticipation of petitioning activity. *See id.* at 934–35. It has been applied to § 1983 actions. *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1092 (9th Cir. 2000). The court does not reach the issue: the parties did not brief sufficiently whether actions by an investigator are analogous to the pre-petitioning activity described in the cases they cite.

The litigation privilege "immunizes defendants from virtually any tort liability." *Beckford v. the Child.'s Grp., Inc.*, No. 24-cv-06468-CRB, 2026 WL 915113, at *5 (N.D. Cal. Apr. 3, 2026) (quoting *Graham-Sult v. Clainos*, 756 F.3d 724, 741 (9th Cir. 2014)); *see* Cal. Civ. Code § 47(b). The "principal purpose" of the privilege is to "afford litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." *Beckford*, 2026 WL 915113, at *5 (quoting *Silberg v. Anderson*, 50 Cal. 3d 205, 213 (1990)). It applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that ha[s] some connection or logical relation to the action." *Id.* (quoting *Graham-Sult*, 756 F.3d at 741). "The distinction between communicative and noncommunicative conduct hinges on the gravamen of the action." *Id.* (quoting *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1058 (2006)).

McDonough contends that her investigation was an official proceeding required by Title IX and governed by 34 C.F.R. § 106.45(b)(4).[57] The plaintiff did not dispute this contention, thus

---

[56] Mot. – ECF No. 36 at 18–23.

[57] *Id.* at 22.

conceding the issue, and instead focused on whether the investigation was pre-litigation activity.[58] No allegations suggest that the disclosure involved communicative conduct by McDonough outside of the official process. The claims against McDonough are dismissed on this ground.

## CONCLUSION

Claims six through eight are dismissed because they assert theories of liability under Title IX and duplicate claim five. Claims five and fourteen for discrimination in violation of Title IX and Cal. Educ. Code § 220 are dismissed for failure to allege deliberate indifference. Claim nine for Title IX retaliation survives. Claim twelve for respondeat superior is dismissed.

The § 1983 claims against McDonough and DeChellis (claims one and two against both and claim three against McDonough) are dismissed. The state claims (claim eleven for negligence against both, claim thirteen for IIED against McDonough, and claim seventeen for invasion of privacy against McDonough) are dismissed.

The § 1983 claims predicated on an equal-protection violation (claim one) and a due-process claim (claim two, to the extent that it is predicated on a faulty investigation) are dismissed. The due-process claim is plausibly pleaded against Bonnett, Conklin, and Kaufman (but not Matlon and Rigney). Claim four for supervisory liability survives against Conklin and Kaufman (but not Matlon or Rigney), as do the state privacy claims (claims seventeen against Bonnett and Conklin and eighteen against Bonnett). Claim three for First Amendment retaliation is dismissed. Claim sixteen for gender violence is dismissed.

All dismissals are without prejudice except for the dismissal of claim twelve for respondeat superior, which is with prejudice. Any amended complaint is due within four weeks and must attach a blackline compare of the amended complaint against the current complaint.

**IT IS SO ORDERED.**

Dated: June 25, 2026

_____
LAUREL BEELER
United States Magistrate Judge

---

[58] Opp'n – ECF No. 41 at 14 & n.4.

United States District Court
Northern District of California