United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

JANE ROE #1,

Plaintiff,

v.

MILL VALLEY SCHOOL DISTRICT, et al.,

Defendants.

Case No. 25-cv-08823-LB

**ORDER ON MOTIONS TO DISMISS**

Re: ECF No. 72–73, 75–76

**INTRODUCTION**

The plaintiff, a former second-grade student at Old Mill Elementary School, alleges that in August 2024, a male classmate touched her thigh and genitals during class, defendant Mill Valley School District and its employees and contractors mishandled the resulting Title IX investigation, and the District disclosed her confidential therapy and counseling information to the classmate's parents.[1] In June 2026, the court dismissed most of the federal claims against the District and its employees and all claims against two outside attorneys who conducted the investigation and decided the appeal.[2] The plaintiff filed a second amended complaint (SAC), and the defendants

[1] Second Am. Compl. (SAC) – ECF No. 70 at 2–4 (¶¶ 4–12). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Order – ECF No. 66.

United States District Court
Northern District of California

again moved to dismiss.[3] This order addresses four motions: by the District; by its five employee defendants (Principal Jason Matlon, Title IX coordinator Erin Conklin, Superintendent Elizabeth Kaufman, Assistant Superintendent Paula Rigney, and counselor Nova Bonnett); and by the two outside attorneys, investigator Sinead McDonough and appeal officer Liz DeChellis.

The District moves to dismiss the Title IX claim (claim five) and the claim under California Education Code § 220 (claim ten).[4] The employees move to dismiss the equal-protection claim (claim one) as to all five of them, the due-process claim (claim two) as to Matlon and Rigney, the First Amendment retaliation claim (claim three) as to Matlon, Conklin, and Bonnett, and the supervisory-liability claim (claim four) as to Rigney.[5] McDonough moves to dismiss all six claims against her: equal protection, due process, and First Amendment retaliation under 42 U.S.C. § 1983 (claims one through three), negligence and negligent infliction of emotional distress (claim eight), intentional infliction of emotional distress (IIED) (claim nine), and invasion of privacy (claim thirteen).[6] DeChellis moves to dismiss the three claims against her (claims one, two, and eight).[7] No one challenges the Title IX retaliation claim (claim six) against the District, the due-process and supervisory-liability claims predicated on the disclosure of the plaintiff's confidential information (which survived the last round against Conklin and Kaufman and, for due process, Bonnett), or the state-law claims against the District and its employees.

The SAC's principal additions are the following. The many flaws in the District's handling of the plaintiff's complaint departed from the District's written policies and the Title IX regulations, and the departures are evidence of sex discrimination. It alleges two instances where the District treated the plaintiff differently from the male classmate: the investigator assessed only the plaintiff's credibility, and the classmate's parents were asked for permission before his privileged medical information was included in the investigation report, whereas the plaintiff's parents were not. It

---

[3] SAC – ECF No. 70; Mots. – ECF Nos. 72–73, 75–76.

[4] Mot. – ECF No. 72 at 6.

[5] Mot. – ECF No. 73 at 2–4.

[6] Mot. – ECF No. 76 at 5–6.

[7] Mot. – ECF No. 75 at 6–7.

United States District Court
Northern District of California

alleges that Matlon, Conklin, and Bonnett acted with animus arising from their view that the plaintiff's report was not serious or credible. And it adds two theories of deliberate indifference: the District failed to prevent the classmate's conduct despite knowing that he had pinched another student's buttocks and had impulse-control problems, and the District kept sending the plaintiff to a contract therapist, Rachel Budnick, after learning that Budnick had asked the plaintiff to demonstrate the touching on Budnick's body. As to the outside attorneys, it alleges that the District retained neither as counsel: McDonough identified herself in her report as an "attorney investigator" proceeding under District policies that refer to "the district's investigator," and DeChellis decided the appeal "on behalf of the District," which is responsible for the decision under Title IX.[8]

The issues are (1) whether the SAC plausibly alleges that the District's handling of the complaint, or any individual defendant's conduct, was because of the plaintiff's sex, (2) whether it plausibly alleges deliberate indifference on any of the three theories, (3) whether the alleged animus supports a First Amendment retaliation claim, (4) whether Rigney can be liable as a supervisor for the appeal decision, (5) whether § 220 reaches retaliation, (6) whether the SAC's new allegations about the attorneys' engagements make them state actors, and (7) whether the state-law claims against the attorneys survive the court's earlier rulings on duty and the litigation privilege.

The court grants the motions in part and denies them in part.

The Title IX claim is dismissed. The SAC does not plausibly allege deliberate indifference. The District's response to the classmate's conduct was meaningful action, however flawed. Its failure to prevent a first incident by a second-grader who had once pinched another student was not clearly unreasonable; and its continued use of Budnick, after learning of a therapeutic technique that the plaintiff's parents objected to, was at most careless. Nor does the SAC plausibly allege that the process was discriminatory. Labeling procedural departures as sex discrimination does not make them so, and the disparities the SAC identifies are between a complainant and a respondent, not between similarly situated students of different sexes. The equal-protection claim fails for the same reason, and the due-process claim, to the extent it rests on a discriminatory

[8] SAC – ECF No. 70 at 11–12 (¶ 50), 19 (¶ 71).

process, fails with it. The due-process claim is dismissed as to Matlon and Rigney because the SAC does not allege their involvement in the disclosure. The First Amendment retaliation claim fails because the SAC alleges only that the defendants acted on their assessment of the plaintiff's report, not because she made it. The supervisory-liability claim against Rigney fails because the appeal she approved violated no constitutional right. The § 220 claim is dismissed to the extent it rests on discrimination, but its retaliation theory survives: § 220 must be construed consistently with Title IX, and Title IX's prohibition of discrimination "on the basis of sex" encompasses retaliation for complaining about it.

The claims against McDonough and DeChellis are dismissed. The SAC's new allegations are that the District retained both as neutrals rather than as advocates, but the label does not change the analysis. Investigating and deciding a student's complaint is not an exclusive public function. The SAC alleges no District control over what either attorney did (it alleges the opposite, that both exercised independent judgment), and the District's obligation under Title IX to ensure its contractors' compliance is regulation of the District, not control of its contractors. The negligence claim against DeChellis is unopposed and fails on the merits. The state-law claims against McDonough are barred by the litigation privilege: they seek damages for what she elicited and wrote in the Title IX proceeding, and the plaintiff's argument that her claims target discrimination rather than communication does not describe claims for negligence, IIED, and invasion of privacy.

Because the plaintiff has amended twice and identifies no additional facts, the dismissals — including all claims against McDonough and DeChellis — are without leave to amend, except that she may amend the two Title IX theories that the court addresses for the first time.

## STATEMENT

### 1. The Incident, the Initial Response, and the Therapy

The plaintiff was a second-grade student at Old Mill Valley Elementary School.[9] On August 30, 2024, a male classmate touched her thigh and genitals and touched her a second time on an

[9] *Id.* at 3 (¶ 5), 5 (¶ 19).

unspecified occasion. Earlier that school year, staff observed the classmate pinch another student's buttocks, and they knew he had challenges with impulse control. On information and belief, no prevention measures were in place to protect the plaintiff and her classmates from inappropriate physical contact by the classmate.[10]

The plaintiff reported the touching to her teacher. Principal Matlon interviewed the plaintiff that day, alone, without notifying her parents or taking notes. He met with the mother later that day, interviewed her a second time (after her parents said they did not want her interviewed alone), concluded that the investigation could not be substantiated, and directed the classmate to apologize, in writing or in person at the plaintiff's option. He was dismissive, refused requested supportive measures, and implemented no safety measures. After the plaintiff's mother contacted Superintendent Kaufman, the classmate was moved to a different classroom.[11] The SAC alleges that Matlon's conduct departed from District policy and Title IX regulations and "demonstrated an outdated attitude of minimization of claims of sexual abuse, discriminatory animus toward female victims of sexual misconduct, and an animus toward a student's decision to report [an] incident and seek supports and a response by school officials."[12]

The District provided therapy as a Title IX supportive measure through its counselor, Nova Bonnett, and Rachel Budnick, an unlicensed psychologist under contract with the District.[13] On September 16, 2024, in a session on campus about the incident, Budnick suggested that the plaintiff show her, on Budnick's body, where and how she had been touched. The plaintiff touched Budnick's thigh. The District and the plaintiffs' parents learned of it when they received investigator McDonough's initial November 1, 2024, report. The District continued to schedule the plaintiff's sessions with Budnick and refused to connect her with another therapist, despite her discomfort.[14]

---

[10] *Id.* at 2 (¶ 4), 7–8 (¶¶ 33–36, 38).

[11] *Id.* at 7–10 (¶¶ 39–41).

[12] *Id.* at 10 (¶ 42); *see id.* at 8–10 (¶ 41).

[13] *Id.* at 5–6 (¶ 25), 21 (¶ 82), 25 (¶ 105).

[14] *Id.* at 3 (¶¶ 6–8), 23–25 (¶¶ 90–106).

United States District Court
Northern District of California

**2. The Title IX Complaint, Investigation, and Appeal**

On September 3, 2024, the plaintiff's parents filed a Title IX complaint with the District regarding the incident and Matlon's mishandling of it.[15] The District hired Sinead McDonough, a second-year attorney working at a private firm, to conduct the Title IX investigation.[16] On information and belief, the District retained her as its Title IX investigator, not to provide legal advice, and had no legal relationship with her. Other attorneys at her firm advised the District behind a firewall. McDonough described herself as an "attorney investigator" proceeding under District policies, which require investigation and refer to "the district's investigator" and "the district's designated investigator."[17] McDonough interviewed Bonnett and Budnick in September 2024. Each disclosed the confidential contents of sessions with the plaintiff, without a waiver. McDonough included the information (including the plaintiff's statement about the incident, whether she was lying, and the touching of Budnick) in her draft report issued on November 1, 2024, which was disclosed to the classmate's parents. The information was used to portray the plaintiff as changing her account or lying.[18] While the classmate's parents were asked for permission before McDonough included his confidential information in the report, which reflects this, the plaintiff's parents were not before her confidential information was disclosed.[19] Kaufman and Conklin knew of the disparity and allowed the draft report to issue anyway.[20] The plaintiff's parents identified flaws in the investigation, among them that McDonough assessed only the plaintiff's credibility and did not treat the classmate's apology as an admission. They twice asked for a different investigator, and the District refused. These and other flaws departed from District policies and the Title IX regulations.[21]

---

[15] *Id.* at 11 (¶ 45).

[16] *Id.* (¶ 47).

[17] *Id.* at 11–12 (¶ 50).

[18] *Id.* at 12–13 (¶¶ 55, 57), 24–27 (¶¶ 102–03, 106, 114–15).

[19] *Id.* at 25–26 (¶¶ 108–10).

[20] *Id.* at 13 (¶ 58), 25–26 (¶¶ 110–11).

[21] *Id.* at 13–17 (¶¶ 59–64).

Conklin investigated the complaint against Matlon, concluding on March 10, 2025, that it could not be substantiated, and dismissed it, which also allegedly departed from District policy and Title IX regulations, evidencing discrimination.[22] The parents appealed.[23] The District retained an outside attorney, Liz DeChellis, employed by a private law firm, to decide the appeal, which she did "on behalf of the District." She upheld the dismissal, and on April 24, 2025, Rigney issued a letter describing the decision, which on information and belief, she had reviewed and approved.[24] The SAC alleges the decision was flawed in four ways: it addressed harassment rather than discrimination, equated the Title IX process with the District's other complaint process, relied on the investigative report, and found no bias without reaching the other issues the appeal raised. All flaws departed from District policy and the Title IX regulations. Rigney's letter said that the District would continue to "process" the complaint under a different District policy, which the SAC characterizes as showing that the investigators were "operating as state actors directly on behalf of the District."[25] After the parents complained that the decision was flawed, Conklin issued an amended notice of investigation on June 9, 2025. That investigation was not complete when the plaintiff sued.[26]

**3. Procedural History**

The plaintiff filed the initial complaint on October 15, 2025, and amended it in February 2026.[27] On June 24, 2026, following the defendants' motions to dismiss, the court dismissed (1) the Title IX and § 220 discrimination claims for failure to plead deliberate indifference, (2) the equal-protection claim because nothing connected the investigation's irregularities to the plaintiff's sex, (3) the due-process claim, to the extent it rested on the investigation, for the same reason, (4) all claims against

---

[22] *Id.* at 17–18 (¶¶ 67, 70(b), (d)–(e)).

[23] *Id.* at 18 (¶ 69).

[24] *Id.* at 17–20 (¶¶ 65–73).

[25] *Id.* at 19–20 (¶¶ 73–74).

[26] *Id.* at 20–21 (¶¶ 76–81).

[27] Compl. – ECF No. 1; First Am. Compl. – ECF No. 33.

Matlon and Rigney (the First Amendment retaliation claim, for failure to allege retaliatory animus, and the supervisory-liability claim), and (5) all claims against McDonough and DeChellis (the § 1983 claims because they were not state actors, the negligence claims because they owed the plaintiff no duty, and the IIED and privacy claims against McDonough because the litigation privilege bars claims predicated on communications within the Title IX proceeding). It sustained the Title IX retaliation claim (against the District), the due-process claim predicated on the disclosure of confidential information (against Bonnett, Conklin, and Kaufman), the supervisory-liability claim (against Conklin and Kaufman), and the state privacy claims (against Bonnett and Conklin).[28]

On July 23, 2026, the plaintiff filed the SAC, which repleads the dismissed claims.[29] Those at issue here are (1) equal protection under 42 U.S.C. § 1983 (claim one, against all individual defendants); (2) due process under § 1983 (claim two, against all individual defendants); (3) First Amendment retaliation under § 1983 (claim three, against Matlon, Conklin, Bonnett, McDonough, and Budnick); (4) supervisory liability under § 1983 (claim four, against Kaufman, Conklin, and Rigney); (5) Title IX discrimination and deliberate indifference (claim five, against the District); (6) sex discrimination and retaliation under § 220 (claim ten, against the District); (7) negligence and negligent infliction of emotional distress (claim eight, against all defendants except Rigney); (8) IIED (claim nine, against Conklin, Matlon, McDonough, Bonnett, and Budnick); and (9) invasion of privacy (claim thirteen, against Budnick, Bonnett, Conklin, and McDonough).[30]

The District, its employees, and the outside attorneys moved to dismiss.[31] The court has federal-question jurisdiction under 28 U.S.C. § 1331. All parties consented to magistrate-judge jurisdiction.[32] *Id.* § 636(c)(1).

---

[28] Order – ECF No. 66 at 2–3, 15, 22–24.

[29] SAC – ECF No. 70.

[30] *Id.* at 28–50 (¶¶ 123–200, 207–40), 52–53 (¶¶ 256–62).

[31] Mots. – ECF Nos. 72–73, 75–76. Budnick answered the complaints. Answers – ECF Nos. 53, 77.

[32] Consents – ECF Nos. 8, 21, 26, 32, 47, 51. The court can decide the motions without oral argument. Civil L.R. 7-1(b).

## STANDARD OF REVIEW

A complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief to give the defendant fair notice of the claims and the grounds for them. Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must plead enough facts to state a claim that is plausible on its face. *Twombly*, 550 U.S. at 570. Fact allegations are accepted as true and construed favorably to plaintiffs. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018). Threadbare recitals of elements, supported by conclusory statements do not suffice, and a claim is not plausible when the facts alleged are "merely consistent with" liability and an "obvious alternative explanation" accounts for them. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 682 (2009) (cleaned up). A complaint also must plead a cognizable legal theory. *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016). Leave to amend should be freely given unless amendment would be futile, the plaintiff has repeatedly failed to cure, or there is undue delay, bad faith, or prejudice. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

## ANALYSIS

### 1. Title IX and Cal. Educ. Code § 220 — Claims Five and Ten (the District)

Claim five rests on two different theories of Title IX liability: deliberate indifference and sex discrimination in the Title IX process. Claim ten asserts sex discrimination and retaliation under § 220, which has the same elements as Title IX. *Donovan v. Poway Unified Sch. Dist.*, 167 Cal. App. 4th 567, 579 (2008); *Videckis v. Pepperdine Univ.*, 100 F. Supp. 3d 927, 935 (C.D. Cal. 2015).

#### 1.1 Deliberate Indifference

A school is liable under Title IX for student-on-student harassment only if (1) it had substantial control over the harasser and the context of the harassment, (2) the harassment was so severe that it deprived the plaintiff of access to educational opportunities or benefits, (3) an official with authority to institute corrective measures had actual knowledge of it, and (4) the school is deliberately indifferent to it "such that the indifference subject[ed the plaintiff] to harassment." *Grabowski v. Ariz. Bd. of Regents*, 69 F.4th 1110, 1118–19 (9th Cir. 2023). Deliberate

indifference is a response, or lack of one, that "is clearly unreasonable in light of the known circumstances," and it must "cause students to undergo harassment or make them liable or vulnerable to it." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 645, 648 (1999) (cleaned up); *accord Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 739 (9th Cir. 2000) (quoting *Davis*, 526 U.S. at 648). The standard is high: it requires conduct amounting to "an official decision not to remedy the discrimination," not a "negligent, lazy, or careless" response. *Grabowski*, 69 F.4th at 1120 (cleaned up). The same standard governs harassment by a school's employees and agents. *Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1089 (9th Cir. 2006).

The plaintiff alleges that the District was deliberately indifferent in three ways: (1) its response to the classmate's conduct; (2) its failure to prevent the conduct; and (3) its response to Budnick's conduct.[33] These theories do not plausibly plead deliberate indifference.

#### 1.1.1 The response to the classmate's conduct

The court previously dismissed this theory because the District's response — same-day interviews, a meeting with the plaintiff's mother, a required apology, transfer of the classmate to a different classroom, therapy, and two outside investigations, reopened to address the parents' concerns — was meaningful action, and the plaintiff's complaint was about its quality.[34] The SAC repeats the same facts. Its additions are conclusions: Matlon's conduct "also constituted deliberate indifference," and the District's hiring of McDonough (who the District knew was an inexperienced investigator) demonstrated "disinterest."[35] *Iqbal*, 556 U.S. at 678. The plaintiff's remaining argument (the flaws were departures from the District's written policies and Title IX regulations) does not change the analysis.[36] A school district's failure to follow its own policy or the federal regulations is not deliberate indifference.[37] *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291–92 (1998); *Oden*, 440 F.3d at 1089–90. This theory is dismissed.

---

[33] SAC – ECF No. 70 at 10–12 (¶¶ 43, 52), 36–38 (¶¶ 161, 166, 169–70, 172).

[34] Order – ECF No. 66 at 10–12.

[35] SAC – ECF No. 70 at 10–12 (¶¶ 43, 52).

[36] Opp'n – ECF No. 78 at 26.

[37] Order – ECF No. 66 at 12.

**1.1.2 The failure to prevent the classmate's conduct**

The plaintiff contends that the court's previous order did not address her allegation that the District was deliberately indifferent before the conduct: staff had seen the classmate pinch another student's buttocks earlier that school year, knew he had impulse-control issues, and, on information and belief, put no measures in place to prevent future incidents.[38] The District responds that failing to isolate a seven-year-old second-grader after one pinching incident is not clearly unreasonable.[39]

The theory fails on the allegations. The Ninth Circuit has recognized a pre-assault Title IX claim where a school's policy of deliberate indifference to reports of sexual misconduct creates a known or obvious risk of harassment. *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1112–13 (9th Cir. 2020). The plaintiff does not plead a policy; she pleads notice about one student. Whatever the contours of such a claim, it requires actual knowledge of a risk of sexual harassment and a response so clearly unreasonable that it amounted to a decision to leave students vulnerable to it. *See Grabowski*, 69 F.4th at 1120. Knowledge that a second-grader with impulse-control problems once pinched a classmate's buttocks is not actual knowledge of a risk of sexual harassment. The SAC also does not allege how the District did or did not respond to the previous incident, what measures were available and withheld, or any facts supporting the belief that nothing was done. Title IX does not require schools to impose any particular discipline, and courts must account for "the ages of the harasser and the victim" in judging both the conduct and the response. *Davis*, 526 U.S. at 651. The theory is dismissed.

**1.1.3 The District's response to Budnick's conduct**

The plaintiff also contends that the District was deliberately indifferent to Budnick's sexual misconduct: the District learned from the November 1, 2024, draft report that Budnick had asked the plaintiff to show, on Budnick's body, where she had been touched, yet it continued to schedule sessions with Budnick and refused to provide a different therapist.[40] The District responds that the

---

[38] Opp'n – ECF No. 78 at 27; SAC – ECF No. 70 at 7–8 (¶¶ 35–38).

[39] Reply – ECF No. 80 at 4 (citing *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 739 (9th Cir. 2000); *Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1089 (9th Cir. 2006)).

[40] SAC – ECF No. 70 at 23–24 (¶¶ 90–94, 96–98), 36 (¶ 161).

United States District Court
Northern District of California

allegations do not describe a clearly unreasonable response and that the draft report, which it asks the court to notice, shows that Budnick's request was innocuous and the District's response "did not even rise to the level of negligent."[41]

The court does not rely on the report. The District submitted it with its reply, and, even if the SAC incorporates it by reference, the court need not consider the report because on the SAC's allegations, the claim fails. As pleaded, what the District learned of was a therapeutic technique (misguided, perhaps, and objected to by the parents) used once, in a session about the incident, by a therapist that the District had retained to help the plaintiff. The SAC does not allege that Budnick acted with any sexual purpose, that she did anything further, or that the District's further use of her exposed the plaintiff to any similar conduct.[42] A district's decision to keep using a therapist after learning of a technique the parents objected to, and its refusal to substitute another therapist, may have been careless or wrong. It is not "an official decision not to remedy" sexual harassment. *Grabowski*, 69 F.4th at 1120 (cleaned up). The theory is dismissed.

#### 1.1.4 Leave to Amend

The deliberate-indifference theory based on the District's response to the classmate's conduct is dismissed without leave to amend because the SAC did not address the deficiencies identified in the earlier order. The new pre-incident and Budnick theories are dismissed with leave to amend.

### 1.2 Sex Discrimination in the Title IX Process

The plaintiff's second theory is that the District's handling of her complaint was itself discrimination "on the basis of sex."[43] 20 U.S.C. § 1681(a). The Title IX regulations recognize that a recipient's treatment of a complainant in response to a formal complaint "may constitute discrimination on the basis of sex." 34 C.F.R. § 106.45(a) (2020). A plaintiff must plausibly plead that sex was a "motivating factor" in the school's conduct. *Schwake v. Ariz. Bd. of Regents*, 967

---

[41] Reply – ECF No. 80 at 5 (cleaned up). The plaintiff argues that the District conceded its deliberate indifference to Budnick's conduct by not addressing her conduct in its motion. Opp'n – ECF No. 78 at 27. But the District moved to dismiss the entire claim and addressed the deliberate indifference theory in its reply. Mot. – ECF No. 72 at 2; Reply – ECF No. 80 at 4–6. The court considers its arguments.

[42] SAC – ECF No. 70 at 23–24 (¶¶ 96–97).

[43] *Id.* at 36 (¶ 162).

F.3d 940, 946 (9th Cir. 2020). No particular doctrinal test applies; the court asks whether the allegations, considered together, make the inference of sex-based motive plausible. *Id.* at 947–49. And "on the basis of sex" means but-for causation: the plaintiff must plausibly allege that the District would have treated her differently from similarly situated persons because of her sex, here, meaning, it would have treated her differently had she been a boy. *Bostock v. Clayton County*, 590 U.S. 644, 656–57 (2020).

The earlier order dismissed the equal-protection claim because its allegations of procedural irregularity did not connect the irregularities to the plaintiff's sex. It dismissed the Title IX claim on deliberate indifference grounds without reaching a process-discrimination theory.[44] The SAC responds in two ways.

First, it alleges that the irregularities departed from written District policy and Title IX regulations and adds new conclusory allegations: Matlon's conduct evidenced discriminatory animus toward female victims; the flaws in the investigation "evidence gender bias against Plaintiff" and discrimination; and the disclosure of the plaintiff's confidential information "evidences sex discrimination."[45] The conclusions carry no weight. *Iqbal*, 556 U.S. at 678.

Discriminatory intent may be pleaded circumstantially, and departures from normal procedures are circumstances that can support the inference. *Vill. of Arlington Heights v. Metro Hous. Dev. Corp.*, 429 U.S. 252, 266–67 (1977), *Ave. 6E Invs., LLC v. City of Yuma*, 818 F.3d 493, 504 (9th Cir. 2016) (applying *Arlington Heights* on a motion to dismiss). But the inference must be plausible, and a departure from procedure supports it only when something connects the departure to the protected characteristic. *Bostock*, 590 U.S. at 656–57. The departures here (an inexperienced principal and investigator, interviews without notes or a support person, an unauthorized disclosure, a truncated appeal) are consistent with inexperience, carelessness, and an institution's interest in resolving a complaint and are not connected to the plaintiff's sex.[46] When the facts are

---

[44] Order – ECF No. 66 at 13 at 12–13.

[45] SAC – ECF No. 70 at 10 (¶ 42), 17–20 (¶¶ 62, 70(b), 73(a)–(b)), 26 (¶ 112).

[46] Mot. – ECF No. 70 at 14–15 (making this point).

"merely consistent with liability" and an "obvious alternative explanation" exists, the claim is not plausible. *Iqbal*, 556 U.S. at 678, 682 (cleaned up). Relabeling the irregularities as policy violations, without more, does not establish a plausible inference of discrimination.

Second, the SAC alleges disparate treatment: the investigator assessed only the plaintiff's credibility in investigating her complaint and did not consider the classmate's apology as an admission, and the classmate's parents were asked for permission before his confidential medical information went into the report, whereas the plaintiff's went in without a waiver.[47] These are differences in how the District treated the complainant and the respondent, not differences in how it treated similarly situated students of different sexes. A complainant's account is the account being tested; a respondent's is a defense. The SAC alleges no fact suggesting that the District would have handled the roles differently had the sexes been reversed: no statement, no pattern, no pressure, nothing about how the District treats male complainants and female respondents. The only sex-linked fact is that the complainant is a girl and the respondent is a boy, which is true of many Title IX complaints. If that fact plus differential treatment of the parties stated a claim, every complainant dissatisfied with a Title IX process involving a respondent of the other sex would state one. *Schwake* does not extend so far: there, the inference of bias rested on the combination of one-sided procedures with allegations of external pressure on the university about its handling of sexual-misconduct complaints and statements by university officials. 967 F.3d at 947–49.

Finally, the plaintiff argues that at the pleading stage she need not negate the defendants' alternative explanations, such as the classmate's special needs or a general practice of treating accusers and accused differently.[48] That is true. But it is her burden to plead facts that make sex-based motive plausible, not merely possible, and the court may consider obvious alternative explanations in deciding whether she has. *Iqbal*, 556 U.S. at 682; *Twombly*, 550 U.S. at 567.[49]

---

[47] SAC – ECF No. 70 at 14 (¶ 60(d)–(e)), 25–26 (¶¶ 110–12).

[48] Opp'n – ECF No. 78 at 13–14, 24–25.

[49] In reaching this conclusion, the court considered whether the complaint plausibly alleged that the District's handling of the plaintiff's complaint was because of her sex. A discrimination plaintiff need not plead a prima facie case or a comparator, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–11 (2002); *Schwake*, 967 F.3d at 947–48, and intent may be shown circumstantially, including through

Claim five, as predicated on a sex-discrimination theory, is dismissed with prejudice because the plaintiff did not cure deficiencies identified in the earlier order. Because the elements of a § 220 claim are the same, claim ten is dismissed with prejudice to the extent that it rests on discrimination. *Donovan*, 167 Cal. App. 4th at 579; *Videckis*, 100 F. Supp. 3d at 935.

**1.3 Retaliation Under § 220**

Claim ten also alleges retaliation.[50] The District contends that § 220 does not reach retaliation because it prohibits discrimination "on the basis of" enumerated characteristics and does not mention retaliation.[51] The plaintiff responds that implementing regulations treat retaliation as a form of discrimination and that § 220 must be construed consistently with Title IX, which reaches retaliation.[52] The plaintiff has the better argument.

The California Legislature has directed that § 220 is to be interpreted consistently with Title IX. Cal. Educ. Code § 201(g); *Donovan*, 167 Cal. App. at 590–91, 595. Title IX, like § 220, prohibits discrimination only "on the basis of sex" and says nothing about retaliation. The Supreme Court nonetheless has held that its text encompasses retaliation against a person because she complained of sex discrimination: such retaliation is intentional discrimination "on the basis of sex." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005). The District's textual argument (retaliation is not an enumerated category) is the argument that *Jackson* rejected for identical statutory language. The state regulations point the same way: they treat retaliation for filing a discrimination complaint

departures from normal procedure. *Arlington Heights*, 429 U.S. at 266–67. The SAC alleges concrete differential treatment of a girl and a boy in the same proceeding on the same subject: the District solicited his parents' consent before using his privileged medical information, published hers without consent, tested her credibility and not his, and disregarded his apology as an admission. It alleges that the District's Title IX coordinator and superintendent knew of the disparity in the handling of the parties' private information and allowed the report to issue anyway. And it alleges that the process departed, repeatedly and at every stage, from the District's written policies and the governing regulations. That the disparities might be explained by the parties' roles rather than their sexes might be considered an argument for summary judgment because at this stage, the court draws the competing inference for the plaintiff. But the plaintiff compares a complainant to a respondent, not similarly situated students of different sexes, and nothing else links the process to sex. Claim five thus does not survive on this theory.

[50] SAC – ECF No. 70 at 49–50 (¶¶ 236–40).

[51] Mot. – ECF No. 70 at 17 (making this point); Reply – ECF No. 80 at 8.

[52] Opp'n – ECF No. 78 at 27 (citing 5 Cal. Code Regs. § 4963(b); 34 C.F.R. § 106.71(a)).

as "a separate allegation of discrimination." Cal. Code. Regs. tit. 5, § 4963(b). The District cites no authority to the contrary: it says only that it is unaware of a California decision construing § 220 so broadly.[53]

The District's fallback argument is that the SAC still fails to plead a causal nexus between the alleged wrongdoing and retaliation.[54] That argument does not warrant dismissal. The court sustained the Title IX retaliation claim on the same allegations, and the District does not challenge that claim in this motion.[55] The § 220 has the same elements as a Title IX claim and survives to the same extent.[56] *Donovan*, 167 Cal. App. at 579; *Videckis*, 100 F. Supp. 3d at 935.

**2. Equal Protection and Due Process — Claims One and Two (District Employees)**

**2.1 Equal Protection**

A plaintiff alleging denial of equal protection based on a suspect classification "must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent." *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998). Discriminatory purpose means that the defendant acted with an intent or purpose to discriminate against the complainant based on membership in a protected group. *Lee v. City of Los Angeles*, 250 F.3d 668, 686–87 (9th Cir. 2001).

---

[53] Reply – ECF No. 80 at 9.

[54] *Id.*

[55] Order – ECF No. 66 at 14–15.

[56] The court considered the contrary argument. Section 220 does not reach retaliation. The statute prohibits discrimination "on the basis of" an enumerated list of characteristics, and engaging in protected activity is not among them. The Legislature knows how to prohibit retaliation expressly when it means to, *see, e.g.*, Cal. Gov. Code § 12940(h) & Cal. Lab. Code § 1102.5, and did not do so in the Education Code's nondiscrimination chapter. The plaintiff identifies no California decision recognizing a retaliation claim under § 220, and the regulation she cites governs the Department of Education's administrative complaint process, not the scope of the civil action authorized by Cal. Educ. Code § 262.3. Whether the California courts would extend *Jackson v. Birmingham* to § 220 is uncertain, and a federal court should be reluctant to expand state-law liability in the first instance. *Del Webb Cmtys., Inc. v. Partington*, 652 F.3d 1145, 1154 (9th Cir. 2011). That said, *Jackson* held that identical "on the basis of sex" language reached retaliation. (Neither side cited *Jackson*.) Given the California Legislature's directive that the Education Code "shall be interpreted as consistent with Title IX and its federal analogues, the court applies *Jackson*'s analysis here.

United States District Court
Northern District of California

The SAC's allegations against the District employees are those addressed in Section 1.2. As to Matlon, Bonnett, and Rigney, the SAC alleges only that they performed their roles badly (Matlon's initial handling of the complaint, Bonnett's disclosure to the investigator, Rigney's approval of the decision) and in doing so, they departed from policy.[57] This is the alleged conduct that was insufficient for the Title IX claim predicated on discrimination, and the result is not different here. As to Conklin and Kaufman, the SAC adds that they knew the classmate's private information had been handled with more care than the plaintiff's and allowed the report to issue anyway.[58] For the reasons in Section 1.2, a complainant-respondent disparity, without more, does not support an inference that either acted because the plaintiff is a girl. Claim one is dismissed with prejudice as to all five employees: this is the third amendment, and the plaintiff did not cure the deficiencies identified in the earlier order.

### 2.2 Due Process — Claim Two (Matlon and Rigney)

The court held previously that there is no constitutional right to a competent or favorable Title IX investigation and that a due-process claim predicated on the investigation requires plausible allegations that a protected characteristic affected how it was conducted.[59] This theory depends on the equal-protection claim and fails with it.[60] The SAC's addition (the phrase "and doing so on the basis of sex," inserted several times into the claim) is a conclusion.[61] As to Matlon and Rigney, the SAC adds nothing about their participation in the disclosure of the plaintiff's confidential information, and the plaintiff disclaims any such theory.[62] The court's earlier ruling stands: claim two states a claim only on the disclosure theory, and only against Bonnett, Conklin, and Kaufman.

---

[57] SAC – ECF No. 70 at 7–10 (¶¶ 37, 40–42), 13 (¶ 57), 19–20 (¶¶ 71–73), 35 (¶ 155).

[58] *Id.* at 25–26 (¶¶ 109–11), 29–30 (¶¶ 128–29).

[59] Order – ECF No. 66 at 16–17 (citing *Troglia v. Cerritos Cmty. Coll. Dist.*, No. 2:25-cv-03161-DOC-KES, 2025 WL 2713160, at *18 (C.D. Cal. Aug. 25, 2025), and *Davis v. Folsom Cordova Unified Sch. Dist.*, No. CIV S-11-1242 KJM DAD PS, 2013 U.S. Dist. LEXIS 9225, at *29–30 (E.D. Cal. Jan. 22, 2013)).

[60] Opp'n – ECF No. 78 at 20 (agreeing that the theory depends on the equal-protection claim).

[61] SAC – ECF No. 70 at 31 (¶ 133).

[62] Mot. – ECF No. 73 at 19–20; Opp'n – ECF No. 78 at 22 ("Plaintiff does not tie Defendant Matlon to the improper disclosures."), 23 ("Plaintiff does not allege Defendant Rigney had a role regarding the confidential disclosures.").

It is dismissed with prejudice as to Matlon and Rigney.[63]

**3. First Amendment Retaliation — Claim Three (Matlon, Conklin, and Bonnett)**

To state a claim for First Amendment retaliation against a government official, a plaintiff must allege that (1) she engaged in constitutionally protected activity, (2) the defendant subjected her to an adverse action that would chill a person of ordinary firmness from continuing the activity, and (3) the protected activity was a substantial or motivating factor in the adverse action. *Mulligan v. Nichols*, 835 F.3d 983, 988 (9th Cir. 2016); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

The plaintiff's theories are that Matlon refused supportive measures and sought to close the matter prematurely, and that Conklin and Bonnett disclosed or permitted the disclosure of her confidential information, all in retaliation for her complaints.[64] The court dismissed the claim before for failure to allege retaliatory animus.[65] The plaintiff is right that the court's earlier order, which focused on the disclosures, did not address her theory as to Matlon.[66] The court does so now.

The SAC's new allegations do not plead causation; they negate it. The SAC alleges that Matlon "minimized the alleged conduct Plaintiff reported" and "therefore" bore animus toward her, and that Matlon, Conklin, and Bonnett did not believe, or deem important, her complaint and so mistreated it.[67] Hostility that arises from a defendant's assessment of a report's merits is not hostility to the making of the report. A principal who concludes that a report describes a minor matter and responds accordingly, or an official who tests the complainant's credibility, may be

---

[63] The employees' notice of motion challenges claim two only as to Matlon and Rigney, but the memorandum argues the investigation theory as to all five, and the plaintiff responded on the merits. Mot. – ECF No. 73 at 2–4, 17–19; Opp'n – ECF No. 78 at 20. The court dismissed that theory as to all defendants before, Order – ECF No. 66 at 17, and nothing in the SAC revives it.

[64] SAC – ECF No. 70 at 33 (¶¶ 140–44); Opp'n – ECF No. 78 at 20–22.

[65] Order – ECF No. 66 at 18–19.

[66] Opp'n – ECF No. 78 at 21–22. The employees also contend that the claim against Bonnett is new. Mot. – ECF No. 73 at 20. Whether or not the FAC named her, the court did not rule on the claim as to her, and the employees now challenge it on the merits. There is no waiver issue either way.

[67] SAC – ECF No. 70 at 33 (¶¶ 142–43); Opp'n – ECF No. 78 at 21.

wrong, negligent, or even deliberately indifferent, but the motive alleged is the defendant's view of the complaint, not the plaintiff's exercise of the right to make it. The plaintiff's contention that "[t]he reason for the animus . . . is immaterial" inverts the element: the reason is the element.[68] An inadequate response to a complaint is not retaliation for the complaint. *Cf. Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 721–22 (2d Cir. 2010) (employer's failure to investigate a discrimination complaint is not an adverse action taken in retaliation for that complaint). The SAC's added assertion that Matlon harbored "an animus towards a student's decision to report [an] incident and seek supports" is a conclusion, and the facts alleged (his view that the matter was minor and his handling of it accordingly) do not support it.[69] As to Conklin and Bonnett, the SAC alleges that they disclosed or permitted the disclosure of the plaintiff's counseling information in the course of the investigation of her complaint. That the disclosure happened because there was an investigation, and the investigation happened because she complained, does not make the disclosure retaliation. Nothing alleged suggests that either acted to punish her for complaining rather than, as the SAC itself alleges, to test her account.[70]

Claim three is dismissed with prejudice.[71]

### 4. Supervisory Liability (Claim Four as to Rigney)

A supervisor is liable under § 1983 for her own participation in a constitutional deprivation or for a sufficient causal connection between her wrongful conduct and a constitutional violation by a subordinate. *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (cleaned up). Either way, there

---

[68] Opp'n – ECF No. 78 at 21.

[69] SAC – ECF No. 70 at 10 (¶ 42), 27 (¶ 118).

[70] *Id.* at 26 (¶ 114) (the information "was used to falsely portray Plaintiff as changing her account, performing, or even lying").

[71] The plaintiff argues that the court's earlier ruling sustaining the Title IX retaliation claim on the same conduct requires the same result here. Opp'n – ECF No. 78 at 21–22. The court sustained that claim at the prima-facie level on the first amended complaint, Order – ECF No. 66 at 14–15, and the District does not challenge it in this motion. The court expresses no view on the effect of the SAC's new allegations on that claim. The court also does not reach the employees' argument, raised for the first time in reply, that limiting the scope of an investigation is not an adverse action. Reply – ECF No. 82 at 7–8.

must be a constitutional violation. Supervisory liability may exist "even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (cleaned up).

The plaintiff clarifies that her theory against Rigney is not the disclosure of the confidential information and instead the appeal: Rigney reviewed and approved DeChellis's appeal decision, issued the letter describing it, and failed to intervene despite the decision's obvious errors.[72] The court did not address the claim before.[73] It fails now. The only constitutional claim that survives is the due-process privacy claim predicated on the disclosure, which Rigney (as the plaintiff concedes) was not involved in.[74] The appeal, however flawed, violated no constitutional right of the plaintiff's: there is no constitutional right to a competent Title IX appeal, and the SAC does not plausibly allege that the appeal was decided because of her sex.[75] With no underlying constitutional violation, there is nothing that Rigney supervised. Claim four against Rigney is dismissed with prejudice.

**5. McDonough and Chellis**

The SAC names McDonough in six claims: (1) Fourteenth Amendment claims for violations of equal protection and due process and First Amendment retaliation (claim one, two, and three, respectively), in violation of 42 U.S.C. § 1983, and (2) state claims for negligence and negligent infliction of emotional distress (claim eight), IIED (claim nine), and invasion of privacy (claim thirteen). It names Dechellis in three claims: claims one, two, and eight.[76] The court dismissed the same claims before: the § 1983 claims because the attorneys were not state actors, the negligence claims because they owed the plaintiff no duty, and the privacy and IIED claims against

---

[72] Opp'n – ECF No. 78 at 23; SAC – ECF No. 70 at 17–20 (¶¶ 68, 70–72, 74).

[73] Order – ECF No. 66 at 20.

[74] *See supra* Section 3.2; Opp'n – ECF No. 78 at 23.

[75] *See* Sections 1.2 and 2.

[76] SAC – ECF No. 70 at 28–33 (¶¶ 123–144), 47–49 (¶¶ 226–35), 52–53 (¶¶ 256–62).

McDonough because the litigation privilege bars claims predicated on communications within the Title IX proceeding.[77] The SAC's new allegations are directed almost entirely at state action and do not change the result.

**5.1 State Action — § 1983 Claims One Through Three**

Section 1983 reaches only conduct under state law. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009); *West v. Atkins*, 487 U.S. 42, 48 (1988). A private party's conduct qualifies only if it is fairly attributable to the state: the deprivation must be caused by the exercise of a right or privilege created by the state, or by a rule of conduct imposed by the state or by a person for whom the state is responsible, and the private party must be one who may fairly be said to be a state actor. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). The Ninth Circuit applies four tests to the second requirement: public function, joint action, governmental compulsion or coercion or governmental nexus. Any one suffices "so long as no countervailing factor exists." *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 747 (9th Cir. 2020) (quoting *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003)). The plaintiff bears the burden of alleging facts that satisfy one of the tests. *Kirtley*, 326 F.3d at 1092.

The inquiry begins by identifying the specific conduct of which the plaintiff complains. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999). Two principles frame it. A private party performs a public function only if the function is "traditionally the exclusive prerogative of the State." *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982) (cleaned up). And the state is responsible for a private decision "only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State"; regulation, public funding, and "[m]ere approval of or acquiescence in the initiatives of a private party" are not enough. *Blum v. Yaretsky*, 457 U.S. 991, 1004–05 (1982); *Rendell-Baker*, 457 U.S. at 840–43.

The court's earlier ruling rested on the first amended complaint's allegations that the District hired McDonough, a lawyer at a private firm, to conduct the Title IX investigation and DeChellis,

[77] Order – ECF No. 66 at 15, 22–24.

United States District Court
Northern District of California

an outside attorney, to officiate the appeal. On those allegations, both were private attorneys retained by a public entity to perform professional services, and the court held that they were not state actors.[78] The SAC adds three things: McDonough, on information and belief, was retained as the District's Title IX investigator rather than as its lawyer; other attorneys at her firm advised the District behind a firewall; and her report described her work as an investigation, called her an "attorney investigator," and invoked District policies that refer to "the district's investigator."[79] DeChellis decided the appeal "on behalf of the District."[80] And Rigney's letter said that the District would continue to "process" the complaint under a different policy, which the SAC reads as confirming that the investigators acted "directly on behalf of the District."[81]

From these allegations and the Title IX regulations, the plaintiff argues that both attorneys were state actors. The District "owns" the Title IX process: the regulations require the recipient to investigate formal complaints and to create the investigative report, make it responsible for compliance whether it uses its own employees or outside contractors, require it to train its investigators and decision-makers, and require it to ensure that appeal decisions meet specified requirements. When the District delegated those functions, McDonough and DeChellis "stood squarely in the shoes of the District," and DeChellis was, "[f]or all intents and purposes," an administrator. Neither was retained as counsel (a fact question that cannot be resolved on the pleadings) so the rule that a private lawyer representing a public client is not a state actor does not apply. And because DeChellis never claimed to be the District's counsel, the court erred in treating her as though she had.[82] The defendant attorneys respond that (1) the SAC still alleges no District control over how either investigated, analyzed, or decided anything, (2) a regulatory scheme

---

[78] Order – ECF No. 66 at 4, 6, 15 (citing *Prather v. Rodeo-Hercules Fire Prevention Dist.*, No. C 10-02120 JSW, 2010 WL 11887944, at *2 (N.D. Cal. Aug. 26, 2010)). The order's statement of facts described McDonough as hired "to conduct a neutral investigation as a Title IX investigator." *Id.* at 4.

[79] SAC – ECF No. 70 at 11–12 (¶ 50); Opp'n – ECF No. 78 at 17.

[80] SAC – ECF No. 70 at 19 (¶ 71); Opp'n – ECF No. 78 at 19.

[81] SAC – ECF No. 70 at 20 (¶ 74).

[82] Opp'n – ECF No. 78 at 15–20 (citing 34 C.F.R. §§ 106.30(a), 106.45(b)(1)(iii), (b)(3), (b)(5), (b)(8), and 85 Fed. Reg. 30489, 30491).

binding the District says nothing about whether the District controlled a contractor's conduct in a particular case, and (3) a public entity's engagement of an outside professional does not make the professional's independent judgment the entity's act.[83]

The plaintiff is right that the court's earlier order characterized both attorneys as "outside counsel" who were "representing their client."[84] The SAC now alleges (plausibly, and the court accepts it) that the District retained them not as advocates but as neutrals: an investigator charged with finding facts and an appeal officer charged with deciding an appeal.[85] The court therefore does not decide whether an attorney retained as a neutral performs a "traditional lawyer's role" or whether her fact-finding is a legal service of the kind the attorney-client privilege protects.[86] *Polk County v. Dodson*, 454 U.S. 312, 318–19, 324–25 (1981). The label does not matter: the question is whether the conduct the plaintiff challenges (McDonough's investigation and report and DeChellis's appeal decision) is fairly attributable to the District. Under the four tests, it is not.

Investigating and deciding a student's complaint of peer misconduct is not a function traditionally reserved exclusively to the state. Private schools do the same thing, under the same regulations, and their doing so is not state action even though Title IX requires it and federal funding pays for it. *Heineke v. Santa Clara Univ.*, 965 F.3d 1009, 1012–14 (9th Cir. 2020) (a private university's Title IX investigation and discipline of a professor was not state action; federal funding and the obligation to comply with Title IX do not make it so); *Rendell-Baker*, 457 U.S. at 842 (education is not an exclusive state function). If a private university's entire Title IX process is

[83] Mot. – ECF No. 75 at 10–15; Reply – ECF No. 79 at 3–7; Mot. – ECF No. 76 at 10–12; Reply – ECF No. 83 at 2–5.

[84] Order – ECF No. 66 at 15.

[85] The plaintiff contends that DeChellis never argued that she was the District's counsel and waived the point. Opp'n – ECF No. 78 at 19. The court's holding did not depend on any argument by DeChellis about her role; it rested on the FAC's allegation that the District hired her to officiate the appeal. Order – ECF No. 66 at 6, 15. In any event, the court now accepts the SAC's characterization of her role, so the point is moot.

[86] McDonough argues that investigations are legal services, citing *Upjohn Co. v. United States*, 449 U.S. 383, 390–91 (1981), and *United States v. Rowe*, 96 F.3d 1294, 1297 (9th Cir. 1996), and that her work product belonged to the District. Reply – ECF No. 83 at 3–5. Those are privilege and work-product principles. They do not decide whether a fact-finder's conduct is state action, and the court does not rely on them.

not state action by virtue of the function performed, an outside investigator's or appeal officer's discrete part in a public district's process is not either.

The plaintiff's principal argument is that Title IX makes the District responsible for the process and requires it to ensure that its contractors comply. That establishes that the District is subject to a regulatory scheme, not that it controlled McDonough's or DeChellis's conduct. The SAC does not allege that anyone at the District told McDonough whom to interview, what to credit, or what to conclude, or told DeChellis how to decide the appeal. It alleges the opposite: both were retained as neutrals to exercise independent judgment, and they exercised it badly. Regulation of a process, however detailed, does not make the regulated party's decisions the state's. *Blum*, 457 U.S. at 1004–05, 1008; *Rendell-Baker*, 457 U.S. at 841–42; *Heineke*, 965 F.3d at 1013–14. The regulatory preamble the plaintiff quotes — that a recipient "remains responsible for compliance" whether it "meets its obligations by using its own personnel or by hiring outside contractors," 85 Fed. Reg. 30026, 30489 — locates responsibility for the contractors' work in the District, which is where the plaintiff's Title IX claim already places it. It does not make the contractors the District. The plaintiff's distinguishing *Rendell-Baker* (a state-funded private school, she says, rather than a public school delegating a function) fails for the same reason. The "delegation" she describes is a public entity's engagement of a contractor for a discrete task. *Rendell-Baker* addressed that directly: "Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." 457 U.S. at 841.

Nor is there joint action. That test asks whether the state has "so far insinuated itself into a position of interdependence" with the private party that it is a joint participant in the challenged conduct, or whether the two acted together (with a "substantial degree of cooperative action" or a shared objective) to bring it about. *Kirtley*, 326 F.3d at 1093 (cleaned up); *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002); *Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir. 1989).[87] The SAC

[87] DeChellis briefs a separate "symbiotic relationship" test drawn from out-of-circuit authority. Mot. – ECF No. 75 at 13–14. The interdependence inquiry that test describes, which originates in *Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961), is the one the Ninth Circuit conducts under the joint-action and nexus tests, and the result is the same under any formulation.

alleges a contract for a discrete engagement, the contractor's independent performance of it, and the District's receipt and use of the work product: Conklin and Kaufman released McDonough's report, and Rigney reviewed, approved, and transmitted DeChellis's decision. A client's adoption of its consultant's independent work is approval of or acquiescence in the work, *Blum*, 457 U.S. at 1004–05, not joint participation in producing it. The District officials' own acts (releasing the report and issuing the appeal decision) are state action, and the plaintiff has sued the officials for them (as addressed in the court's analysis, above). The phrase "on behalf of the District" adds nothing. It describes the engagement, and every contractor acts on behalf of its government client when it performs a government contract.

*Kirtley* is the closest Ninth Circuit analog. A court-appointed guardian ad litem — a private professional appointed by a state tribunal, regulated by statute, and charged with exercising independent judgment in a state proceeding — is not a state actor: the function is not exclusively governmental, the appointment and the statutory scheme are neither compulsion nor joint action, and the guardian's independence is the opposite of the control that state action requires. 326 F.3d at 1092–96. The same is true of a neutral investigator and a neutral appeal officer whom a public school district retains for a Title IX proceeding. Whether the neutral is a lawyer is beside the point; a non-lawyer investigator retained on the same terms would stand in the same position. The plaintiff's contrary rule (that everyone to whom a public school district delegates a Title IX function is a state actor) would make every outside investigator and appeal officer a constitutional defendant. She cites no decision so holding, and the court is aware of none.[88]

[88] The plaintiff does not argue that the District delegated to the attorneys a constitutional obligation of its own, and the argument would not succeed. In *West v. Atkins*, 487 U.S. 42, 54–57 (1988), a private physician under contract to treat prisoners acted under color of state law because the state had an affirmative Eighth Amendment duty to provide medical care to those it incarcerated and delegated that duty to him. The Ninth Circuit has declined to extend *West* beyond delegations of affirmative constitutional obligations. *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 924–26 (9th Cir. 2011) (a prison's contractor for religious services was not a state actor because the state's free-exercise obligation is negative, not affirmative). The District's duty to investigate the plaintiff's complaint comes from a federal funding statute and its regulations. The Constitution constrains how the District treats the plaintiff when it acts; it does not require the District to investigate. *Cf. DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195–97 (1989).

The plaintiff's fallback (that state action is a fact question for discovery) misapprehends the inquiry. On a motion to dismiss, the question is whether the facts alleged, taken as true, satisfy one of the tests, and it is the plaintiff's burden to allege such facts. *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 (9th Cir. 2011). The SAC, in its third iteration, describes the engagements in detail, and the description it gives forecloses, rather than supports, the control on which state action would depend. Discovery into the engagements' terms would not change that.

Claims one and two against DeChellis and claims one through three against McDonough are dismissed. Two observations follow. First, the equal-protection claims would fail on the merits even if the attorneys were state actors, for the reasons in Sections 1.2 and 2.1: the SAC's allegations against them are policy departures and complainant-respondent disparities, and nothing connects McDonough's credibility assessments or her handling of the confidential information, or DeChellis's four alleged errors, to the plaintiff's sex (and the SAC alleges nothing about DeChellis and the confidential information at all).[89] So would the due-process claims to the extent they rest on the quality of the investigation or the appeal (Section 2.2), and the First Amendment retaliation claim against McDonough (Section 3). The due-process claim's disclosure theory, which survives against Bonnett, Conklin, and Kaufman, fails against McDonough only because she is not a state actor. Second, because the § 1983 claims fail for lack of state action, the court again does not reach McDonough's contention that the *Noerr-Pennington* doctrine immunizes her.[90]

### 5.2 The State Claims Against McDonough — Claims Eight, Nine, and Thirteen

The negligence, IIED, and invasion-of-privacy claims against McDonough rest on the same

[89] SAC – ECF No. 70 at 14 (¶ 60(d)), 19–20 (¶ 73(a)–(d)), 25 (¶ 109), 30 (¶ 129); Opp'n – ECF No. 78 at 15; Mot. – ECF No. 75 at 15; Reply – ECF No. 79 at 7–8.

[90] Mot. – ECF No. 76 at 14–15; Reply – ECF No. 83 at 5–6. The plaintiff does not address the doctrine. The court notes two difficulties with the argument without deciding it. The doctrine immunizes a party's own petitioning and conduct incidental to it, including a defendant's conduct in defending a suit. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929, 934–35 (9th Cir. 2006); *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005). McDonough's argument depends on characterizing her investigation as conduct in anticipation of a lawsuit against her client — that is, as advocacy for the District — which sits uneasily with her insistence elsewhere that she conducted a "neutral investigation" in the exercise of independent judgment. Reply – ECF No. 83 at 3–4, 6. And neither side has explained how a neutral fact-finder's report in a grievance process that federal regulations require is petitioning, or incidental to petitioning, by anyone.

conduct: she sought the plaintiff's confidential counseling and therapy information from Bonnett and Budnick without telling the plaintiff's parents or obtaining a waiver, included it in the draft report that went to the classmate's parents while handling the classmate's private information more carefully, and, more generally, investigated badly.[91] The court dismissed these claims before on two grounds: McDonough, as outside counsel, owed the plaintiff no duty, and the litigation privilege, Cal. Civ. Code § 47(b), bars claims predicated on communications within the Title IX proceeding, which were the only communications the first amended complaint alleged.[92] The second ground is dispositive again.

The privilege applies to any communication made in a judicial or quasi-judicial proceeding, or in any other official proceeding authorized by law, by a litigant or other participant authorized by law, to achieve the objects of the proceeding, and having some connection or logical relation to it. Cal. Civ. Code § 47(b); *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990). It is absolute: it applies to all torts except malicious prosecution and to all communications within its scope, "irrespective of their maliciousness." *Id.* at 215–16 (cleaned up); *Action Apartment Ass'n v. City of Santa Monica*, 41 Cal. 4th 1232, 1241 (2007). It protects communicative acts, not noncommunicative conduct, and the distinction "hinges on the gravamen of the action": when the gravamen is a communication, the privilege extends to noncommunicative acts necessarily related to it. *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1058, 1065 (2006). The plaintiff conceded in the last round, and does not dispute now, that the Title IX investigation was an official proceeding authorized by law.[93]

The SAC adds no communication outside the Title IX proceeding, and the plaintiff does not contend otherwise. Her argument is that the privilege does not reach McDonough's "discriminatory and retaliatory treatment" of her — soliciting and disseminating her private information while treating the classmate's with more care — because her claims are "based on

[91] SAC – ECF No. 70 at 13–16 (¶¶ 60–61), 25–26 (¶¶ 106–10), 47–49 (¶¶ 226–35), 52–53 (¶¶ 256–62); Opp'n – ECF No. 78 at 6, 28–29; Mot. – ECF No. 76 at 9, 11–13.

[92] Order – ECF No. 66 at 22–24.

[93] *Id.* at 23–24; Opp'n – ECF No. 78 at 28–29.

bias and discrimination, not 'communicative conduct.'"[94] The argument fails because the claims she asserts against McDonough are not discrimination claims. Claims eight, nine, and thirteen are for negligence, IIED, and invasion of privacy, and each seeks damages for the disclosure itself: the interviews in which McDonough elicited the information and the report in which she published it. Those are communications in the proceeding, by a participant in it, for its purposes. The authorities the plaintiff cites hold that a claim challenging a decision — a tenure denial, a retaliatory investigation — does not arise from the communications that lead to or announce it, and the *Doe #1* footnote, as the plaintiff describes it, applied that distinction to claims that an appeal decision was the product of bias. *Park v. Bd. of Trs. of Cal. State Univ.*, 2 Cal. 5th 1057, 1060–68 (2017); *Laker v. Bd. of Trs. of Cal. State Univ.*, 32 Cal. App. 5th 745, 772–73 (2019); *Doe #1 v. Palo Alto Unified Sch. Dist.*, No. 25-cv-02120-EKL, 2026 WL 881704, at *4 n.2 (N.D. Cal. Mar. 30, 2026). Here there is no separate decision of which the communications are merely evidence. The communications are the wrong. That McDonough allegedly acted with a discriminatory motive does not matter: the privilege applies regardless of malice. *Silberg*, 50 Cal. 3d at 215–16. The plaintiff's remedy for discrimination in the process, if she has one, is her Title IX and § 220 claims against the District, not a tort claim against a participant for what she said in the proceeding.

The court therefore does not revisit whether McDonough, if retained as a neutral rather than as counsel, owed the plaintiff a duty of care in handling her confidential information (a question on which the plaintiff cites *Doe #1* and McDonough cites the rule that a lawyer owes no duty to her client's adversary).[95] The privilege bars the claims whether or not a duty existed. To the extent the negligence claim rests on the quality of the investigation rather than the disclosure, it fails for the additional reason the court gave before: a neutral whom a school district retains to investigate a complaint has no special relationship with the complainant of the kind that supports a duty to

[94] Opp'n – ECF No. 78 at 28–29 (quoting *Doe #1*, 2026 WL 881704, at *4 n.2). McDonough responds that the footnote is dictum and that the claims here are not discrimination claims. Reply – ECF No. 83 at 7–8.

[95] Opp'n – ECF No. 78 at 29 (citing *Doe #1*, 2026 WL 881704, at *4); Reply – ECF No. 83 at 8–9 (citing *Fox v. Pollack*, 181 Cal. App. 3d 954, 961 (1986)).

United States District Court
Northern District of California

protect her, *C.A. v. William S. Hart Union High Sch. Dist.*, 53 Cal. 4th 861, 869–70 (2012), and the SAC's additions describe how McDonough investigated, not any relationship between her and the plaintiff. Claims eight, nine, and thirteen are dismissed with prejudice as to McDonough.[96]

### 5.3 The Negligence Claim Against DeChellis — Claim Eight

DeChellis moves to dismiss the negligence claim on the ground the court adopted before: she owed the plaintiff no duty of care.[97] The plaintiff does not respond. Her opposition's only duty argument is that McDonough owed her a duty regarding her confidential information; it does not mention DeChellis.[98] The claim is dismissed as unopposed and, in any event, on the merits. *Cf. Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (claims not defended in opposition are abandoned). The SAC's additions describe how DeChellis decided the appeal (which policies she applied, what she overlooked, and what she concluded), not any relationship she had with the plaintiff.[99] A neutral retained to decide a grievance appeal has no special relationship with a party of the kind that supports a duty to protect the party, *C.A.*, 53 Cal. 4th at 869–70, and a duty of care running from a neutral decision-maker to a party for the substance of the decision would defeat the neutrality that the engagement exists to provide. *Cf. Howard v. Drapkin*, 222 Cal. App. 3d 843, 857–60 (1990) (extending quasi-judicial immunity to neutral third parties who perform dispute-resolution functions because exposure to tort liability would deter them from serving). The court's earlier ruling stands. The claim is dismissed with prejudice.

## CONCLUSION

The District's motion (ECF No. 72) is granted in part and denied in part. Claim five (Title IX)

---

[96] McDonough incorporates by reference her earlier motion's request that the court decline supplemental jurisdiction over the state claims. Mot. – ECF No. 76 at 9–10. Federal claims remain against other defendants, and the state claims against McDonough fail on the merits, so the court does not reach the request.

[97] Mot. – ECF No. 75 at 17–20 (citing *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 397 (1992); *Goodman v. Kennedy*, 18 Cal. 3d 335, 344 (1976); and the factors in *Rowland v. Christian*, 69 Cal. 2d 108 (1968)).

[98] Opp'n – ECF No. 78 at 29; Reply – ECF No. 79 at 9.

[99] SAC – ECF No. 70 at 6 (¶ 27), 19–20 (¶¶ 71–73).

is dismissed. The deliberate-indifference theory based on the District's response to the classmate's conduct and the sex-discrimination theory are dismissed without leave to amend; the pre-incident and Budnick theories are dismissed with leave to amend. Claim ten (§ 220) is dismissed without leave to amend to the extent it rests on discrimination; the motion is denied as to the retaliation theory, which survives.

The employees' motion (ECF No. 73) is granted. Claim one (equal protection) is dismissed as to Matlon, Conklin, Kaufman, Bonnett, and Rigney. Claim two (due process) is dismissed as to Matlon and Rigney; it remains against Bonnett, Conklin, and Kaufman only on the theory that they disclosed or permitted the disclosure of the plaintiff's confidential information. Claim three (First Amendment retaliation) is dismissed as to Matlon, Conklin, and Bonnett. Claim four (supervisory liability) is dismissed as to Rigney. These dismissals are without leave to amend, without prejudice to a motion under Rule 15 for leave to amend if discovery on the surviving claims (which reaches the investigation, the report, and the disclosure) yields facts supporting an inference of sex-based or retaliatory motive.

DeChellis's motion (ECF No. 75) is granted. Claims one (equal protection), two (due process), and eight (negligence) are dismissed against her without leave to amend.

McDonough's motion (ECF No. 76) is granted. Claims one (equal protection), two (due process), three (First Amendment retaliation), eight (negligence and negligent infliction of emotional distress), nine (IIED), and thirteen (invasion of privacy) are dismissed against her without leave to amend.

The amended complaint on the two Title IX and § 220 theories (pre-incident and Budnick) is due on September 22, 2026, and must attach a blackline comparison of the amended complaint against the current complaint. This resolves ECF Nos. 72, 73, 75, and 76.

**IT IS SO ORDERED.**

Dated: September 8, 2026

LAUREL BEELER
United States Magistrate Judge